**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 12, 2014**

# In the Court of Appeals of Georgia

A14A1444. IN RE: ESTATE OF SIERRA LEIGH WERTZER.

McMILLIAN, Judge.

The parties to this appeal, Grace Wertzer ("mother") and Saul Wertzer ("father"), are the biological parents of Sierra Leigh Wertzer, an incapacitated adult.[1] The primary issue in this appeal is whether the probate court had the authority to enter an order establishing a visitation schedule with the father, over the objection of the mother, who had been appointed Sierra's guardian and conservator. We now hold that the probate court does have such authority.

The record and hearing transcripts show that the mother and father were divorced in 2004. Pursuant to the terms of the parties' settlement agreement, the

---

[1] Sierra has been diagnosed with autism, hearing loss, nonverbal/Apraxia, visual impairment, and mental retardation. However, she is physically capable and has participated in activities such as swimming, gymnastics, and horseback riding.

mother was granted sole legal and physical custody of Sierra. The father was granted limited visitation with Sierra, which was supervised for the first year following the divorce.[2] This plan apparently remained unchanged until the present proceedings were instituted.

In April 2013, the father filed a petition to modify visitation in the superior court. In response, the mother moved to suspend the father's visitation and for attorney fees. In May 2013, the mother filed a Petition for Appointment of a Guardian and/or Conservator in the Cobb County probate court in anticipation of Sierra's 18th birthday.[3] The father subsequently moved to intervene and for additional relief, seeking to continue and extend the visitation he had been granted in the divorce proceedings to include overnight visits and a week-long visitation period in the summer. Additionally, the father requested that the mother notify him of any changes to Sierra's medical condition, maintenance medications, physicians, and residential status. Alternatively, the father sought to be appointed co-guardian along with the mother.

---

[2] The father was allowed to visit with Sierra one weekend a month for six hours on Saturday and six hours on Sunday. The visits were to occur away from the mother's residence where Sierra lived.

[3] Sierra turned 18 years old on November 20, 2013.

On July 29, 2013, the probate court granted the father's request to intervene in the guardianship proceedings, but reserved ruling on the other relief requested in his motion. Two days later, the probate court granted the mother's petition for guardianship/conservatorship, but once again reserved ruling on the other relief requested in the father's motion to intervene. Subsequently, the mother filed a petition in the probate court to dismiss the father's request for visitation, contending that the probate court lacked authority to "force" Sierra to visit with her father.

The probate court denied the mother's motion to dismiss the father's petition on October 30, 2013.[4] Sierra turned 18 on November 20, 2013, and on December 3, 2013, the probate court issued letters of guardianship and conservatorship to the mother pursuant to its earlier order granting the petition for guardianship.

Following a multi-day hearing which commenced on December 9, 2013, the probate court issued an order granting the father supervised visitation with Sierra during the third weekend of each month. The probate court slightly extended the hours of the Saturday visits, but denied the father's request for overnight visitation

[4] In the interim, pursuant to the parties' agreement, the superior court entered a "Consent Final Order," under which the father agreed to supervised visitation until Sierra turned 18. The consent order also provided that "any remaining matters involving the Child shall be decided [by the probate court judge] in the pending action between the parties in the Probate Court.

3

and for an extended visitation period during the summer. The probate court noted that the mother and her counsel did not appear to have any objections to the father being informed of changes to Sierra's medical condition, medications or residence, and additionally ordered, consistent with the parties' prior divorce settlement agreement, that the parents confer with each other on all important matters pertaining to Sierra's health, welfare, and education, and that each parent notify the other in the event they become aware that Sierra is suffering from any serious illness. Further, the mother was required to allow the father access to Sierra's medical information and to all information regarding Sierra's education.[5]

The mother appeals, arguing that: (1) the probate court exceeded its authority by "imposing" a "required" visitation schedule on an adult ward; (2) the probate court's order improperly impedes her duties as a guardian; (3) the probate court erred by finding that the visitation was in Sierra's best interest; and (4) the probate court erred by requiring her to communicate on a regular basis with the father and to confer with him regarding all important matters related to Sierra.

---

[5] It does not appear that the probate court specifically ruled on the father's alternative request to be appointed co-guardian.

1. We first address the probate court's authority to enter the visitation order, which requires an examination of the jurisdiction of the probate court and the rights and obligations of the guardian and ward. Pursuant to OCGA § 15-9-30 (a), and unless otherwise provided by law, probate courts have the authority to exercise original, exclusive, and general jurisdiction over

> (5) The appointment and removal of . . . guardians of incapacitated adults, and conservators of incapacitated adults and persons who are incompetent because of mental illness or mental retardation;

> (6) All controversies as to the right of guardianship . . . ; [and . . .]

> (10) All other matters and things as appertain or relate . . . to persons who are incompetent because of mental illness or mental retardation.

OCGA § 15-9- 30 (a) (5), (6) & (10). *Gnann v. Woodall*, 270 Ga. 516, 517 (511 SE2d 188) (1999). Additionally, OCGA § 29-4-13 (a) provides that the order granting or denying the guardianship "shall specify," among other things, "(2) Any powers retained by the ward . . . (3) The limitations on the guardianship; . . . [and] (7) *Such other and further provisions of the guardianship as the court shall determine to be in the best interest of the ward, stating the reasons therefor.*" (Emphasis supplied.)

5

OCGA § 29-4-22, in turn, governs the obligations and decision-making authority of the guardian. Under subsection (a), "*[e]xcept as otherwise provided by law or by the court*," a guardian has the right to make decisions concerning "the ward's support, care, education, health, and welfare." In making such decisions, the guardian is required to consider "the expressed desires and personal values of the ward[, and] shall at all times act as a fiduciary in the ward's best interest and exercise reasonable care, diligence and prudence." OCGA § 29-4-22 (a). Subsection (b) requires the guardian to arrange for the support, care, education, health, and welfare of the ward, and to make reports to the probate court on a regular basis. OCGA § 29-4-22 (b) (6) & (9).

Additional rights and powers are granted to the guardian under OCGA § 29-4-23. Accordingly, "*[u]nless inconsistent with the terms of any court order* relating to the guardianship, a guardian may" take custody of the ward, give consents or approvals for medical or other professional care, bring or defend legal actions on behalf of the ward, and exercise other powers which are reasonably necessary to provide for the ward. OCGA § 29-4-23 (a). Under subsection (b), the probate court may grant other specific powers to the guardian, such as to establish the ward's place

of dwelling outside the state, bring an action for divorce, or consent to the adoption of the ward.

Adult wards also have certain statutory rights as are set forth in OCGA § 29-4-20. Those rights include the right to a guardian who acts in the ward's best interest, OCGA § 29-4-20 (a) (1), and the right to "[c]ommunicate freely and privately with persons other than the guardian, except as otherwise ordered by a court of competent jurisdiction[.]" OCGA § 29-4-20 (a) (4).

Moreover, OCGA § 29-4-40 gives the probate court continuing judicial oversight to ensure that the ward's rights and privileges are protected and gives the court the authority to conduct a judicial inquiry or issue orders either upon the filing of a petition or on its own motion. And OCGA § 29-4-41 allows the court to modify the guardianship "by adjusting the duties or powers of the guardian, as defined in [OCGA §§] 29-4-22 and 29-4-23," based on a change in capacity of the ward or upon a showing that the modification is in the ward's best interest. OCGA § 29-4-41 (a) and (c).[6]

---

[6] We are cognizant that the probate court did not purport to act under either of these provisions.

We glean from these provisions that the legislature intended to grant the guardian broad authority to make decisions and act on the behalf of an incapacitated adult ward. But those powers and rights are not unfettered. Rather, the grant of powers and rights to the guardian is expressly made subject to orders of the probate court. See OCGA §§ 29-4-22 (a) ("[e]xcept as otherwise provided . . . by the court . . ."); 29-4-23 ("unless inconsistent with the terms of any order relating to the guardianship . . ."). Further, the probate court is expressly given the authority to place limitations on the guardianship and to determine "other and further provisions of the guardianship . . . in the best interest of the ward . . ." See OCGA §§ 29-4-13 (a) (3) & (7); 29-4-40; 29-4-41. Accordingly, the grant of authority to the probate court to oversee guardianships is also broad. *Heath v. Sims*, 242 Ga. App. 691, 693 (1) (531 SE2d 115) (2000) ("[w]ith respect to areas in which the probate court has been given exclusive, original subject matter jurisdiction, its authority is broad.").

As recognized in the probate court's order, the ward also retains certain rights, including the right to "[c]ommunicate freely and privately with persons other than the guardian, except as otherwise ordered by a court of competent jurisdiction[.]"[7] OCGA

---

[7] Interestingly, it appears that the probate court, not the guardian, has been specifically granted the authority to curtail this right.

8

§ 29-4-20 (a) (4). The mother asserts, however, that "communicate is not synonymous" with "visit" and argues that if the legislature had intended to give the ward the right to "visit" with persons other than the guardian it would have so provided, just as it did when it enacted "entire code sections" on visitation plans between non-custodial parents and their children. But we are not persuaded by this "in pari materia" argument as it is based on a false premise – that child custody and visitation statutes in Title 19 are related in subject matter to the guardianship statutes in Title 29. See *U.S. Bank Nat. Assn. v. Gordon*, 289 Ga. 12, 15 (4) (709 SE2d 258) (2011) ("[i]n particular, statutes 'in pari materia,' i.e., statutes relating to the same subject matter, must be construed together.") (citation and punctuation omitted). Nor are we persuaded that the guardian has the sole right to make decisions about who visits with the ward, or that the probate court has no authority to enter an order to protect the ward's right to visit with persons other than the guardian if the court deems such visitation to be in the ward's best interest.[8]

---

[8] We note that at times the mother frames the issue in this case as if Sierra were being "forced" to visit with her father. But we decline to read the probate court's order in that fashion. Sierra, whose communication skills are limited, has apparently never directly expressed that she does not wish to visit with her father. Although, as discussed more fully in Division 3, the mother presented testimony that Sierra became noticeably agitated and anxious before and after visits with her father, the probate court, while noting its concern, found that the mother had failed to prove that Sierra's

Moreover, this Court has previously considered whether the court could order visitation over the objection of a guardian. In *Mitchum v. Manning*, 304 Ga. App. 842, 843 (698 SE2d 360) (2010), the mother/guardian opposed the father's request for visitation with his adult incapacitated daughter on the grounds that the ward's disabilities were caused by the father, who had allegedly abused the mother while she was pregnant. The father was granted visitation, and the mother appealed to this Court. Expressly considering the interplay between the guardian's authority to exercise powers related to the ward's health and welfare and the ward's right to "communicate" with persons other than the guardian, along with our strong public policy of allowing a divorced parent continuing contact with his child, we concluded that the court had not erred by granting the father's petition for visitation since no medical evidence or direct testimony was presented that the visitation would have a negative impact on the ward. Id. at 843-844.

The mother, however, attempts to distinguish *Mitchum* by arguing that the visitation in that case, which allowed the father to visit his daughter at a medical

___

visitation with her father was the source of the behavior issues. Further, both the guardian ad litem and Sierra's court appointed attorney recommended that the visitation continue. Thus, our opinion should not be read as establishing any precedent on whether a probate court can "force" an adult ward to visit with someone against her express wishes.

10

facility at unspecified times, was far more limited in scope than the visitation ordered by the court in this case. We disagree. Here, the probate court granted the father supervised visitation for less than 24 hours a month, whereas it appears the father in *Mitchum* could have visited his daughter every day if that was what he wanted to do. Moreover, the amount or quality of visitation was not a deciding factor in *Mitchum*, nor do we find it to be here where the key issue is the authority granted to the probate court in this guardianship matter.

Accordingly, we find that the probate court had the authority to establish a set visitation schedule between Sierra and her father in order to protect Sierra's rights and best interests. Moreover, inasmuch as the mother has set forth a separate enumeration challenging the probate court's order on evidentiary grounds, we address that issue in Division 3.

2. The mother also argues that the probate court's order "directly impedes" her statutory duty under OCGA § 29-4-22 (b) (2) to "remain personally acquainted with the ward and maintain sufficient contact with the ward to know of the ward's capacities, limitations, needs, opportunities, and physical and mental health." We fail to see how, and indeed there is nothing but the mother's argument to suggest, that it "would completely undermine" her ability to perform her duties as guardian if Sierra

11

is allowed to visit with her father over the course of two days for less than 24 hours per month. This argument is patently without merit.

3. The mother also argues that the probate court erred by finding that the visitation was in Sierra's best interest, arguing that its decision was without evidentiary support. The parties agree that we view this evidentiary challenge under the "any evidence" standard. *Cruver v. Mitchell*, 289 Ga. App. 145, 147 (1) (b) (656 SE2d 269) (2008).

As to this issue, the mother presented evidence that Sierra acted anxious and agitated before and after visits with her father and that at times she had also engaged in self-injurious and sexual behaviors, which the mother believed were indicative of abuse by the father and/or paternal grandparents, who almost always traveled to Georgia for the weekend of the visitations so they could see their granddaughter. The behaviors were more pronounced in 2009, after which they abated for several years, only to re-appear in May 2013, shortly after the father filed his petition for increased visitation. Although several reports were filed with the Department of Family and Children Services ("DFACS") about Sierra's inappropriate behaviors and the concerns they raised, the allegations of abuse were apparently never substantiated, and the father testified that he was generally unaware of the DFACS reports or

12

allegations until the hearing in this case. Moreover, it does not appear that the mother filed anything in the superior court to curtail or suspend the father's visitations rights until after he filed his request for extended visitation in April 2013,[9] and the visitation terms appear to have remained unchanged until the father consented to the short period of supervised visitation immediately before Sierra turned 18 so that his visitation could continue until the probate court had the opportunity to decide the matter. Evidence was also presented that autistic children are subject to unpredictable behaviors and that certain of Sierra's concerning behaviors were "typical" of autistic children. Moreover, the record supports that a teacher at Sierra's school may have shown her pornography or engaged in other improper behavior around the time she started acting out in 2009; Sierra had problems with her cochlear implant, seizure disorder, and medications, which may have contributed to the behaviors in 2013; and her behavior improved after she was hospitalized for her seizures and modifications were made to her environment at school.

Additionally, the father presented the testimony of witnesses who had, in contrast to the mother's witnesses, actually observed his interactions with Sierra,

[9] It does appear that the visitations were suspended for a period prior to the parties' divorce, but that suspension apparently does not relate to the behavior or allegations at issue here.

13

including the person who supervised the visits in the months just prior to the December 2013 hearing. These witnesses indicated that the father's interactions with his daughter appeared to be appropriate, their relationship appeared to be good, it did not appear that Sierra was being forced to visit with her father, and Sierra appeared to enjoy being with her father and paternal grandparents.

Moreover, the guardian ad litem and Sierra's court-appointed attorney were present throughout the hearing and actively participated in questioning the witnesses. And the guardian ad litem visited Sierra on two occasions prior to the hearing. At the conclusion of the presentation of the evidence, both the guardian ad litem and the court-appointed attorney recommended to the probate court that the father's visitation should continue on the same terms as before, with a slight increase in the length of the Saturday visitation. Neither the guardian ad litem or the court-appointed attorney believed that supervised visitation was necessary, although both believed that overnight visits were inadvisable at that time but might possibly be considered in the future. Further, the guardian ad litem opined that it was in Sierra's best interest to impose a "regular schedule that's transparent."

Based on these recommendations, and relying "heavily" on the credibility of the witnesses, the probate court rejected the mother's claim that Sierra's behavioral

issues were caused by the visits with her father and rejected the mother's request to suspend the father's visitation. "On appeal, we must defer to the probate court's credibility determinations." *Cruver*, 289 Ga. App. at 147 (1) (b). Having reviewed the extensive evidence and testimony presented in this case, we find the probate court's order was supported by sufficient, competent evidence. Accordingly, the mother's challenge to the order based on evidentiary grounds is without merit. *Mitchum*, 304 Ga. App. at 843-844.

4. Lastly, the mother contends that the trial court erred by "requiring the guardian to communicate on a regular basis with [the father] and confer with him regarding all important matters related to Sierra."

Confer means, among other things, to "consult together," jointly examine, or contribute. The Compact Oxford English Dictionary 311 (2d ed. 1991). Moreover, we note that it appears that the probate court intended the "confer" requirement to be different than other provisions requiring the mother to keep the father "apprised" of any changes to the ward's medical condition or residence or the requirement that the parents "notify" the other of any serious illness suffered by the ward. We agree with the mother that the requirement that she "confer" with the father concerning all important matters relating to Sierra's health and welfare would in essence elevate the

15

father to the status of a co-guardian, without requiring him to fulfill the other obligations or adhere to the formalities imposed on a court- appointed guardian of an adult ward.[10] Moreover, the father appears to concede that he does not have the right to have direct input on these issues and acknowledges that there is nothing in the probate code that would appear to require the guardian to consult with him on decisions concerning the ward or to follow his recommendations and suggestions. Rather, the father suggests that the probate court's order should merely require the guardian to inform him of any "new developments" concerning his daughter. As the probate court stated in its order, based on the representations of the mother and her attorney, the mother and her attorney did not appear to oppose the requirement that the father be *informed* of any changes to Sierra's medical status or residence, and the mother does not specifically challenge that portion of the order on appeal. Accordingly, we affirm the portion of the probate court's order requiring the mother to inform the father of new developments or changes to Sierra's medical, educational,

---

[10] For example, OCGA § 29-4-25 requires the guardian to first "take an oath or affirmation before the court to perform well and truly the duties required of a guardian."

health or residence;[11] however, the order must be vacated to the extent that it requires the mother to confer or consult with the father on all important matters, and this case must be remanded to the probate court for the re-entry of an order consistent with this opinion.

*Judgment affirmed in part, vacated in part and remanded with direction. Phipps, C. J., and Ellington, P. J., concur.*

---

[11] Even if the parties did not appear to agree with the requirement, we believe the probate court would have such authority under the provisions cited above and to protect the ward's rights and best interests.