FINAL COPY
309 Ga. 654

S20Q0843.  SYNOVUS BANK v. KELLEY.

MCMILLIAN, Justice.

The United States District Court for the Middle District of Georgia has certified two questions to this Court regarding the timing under Georgia law when a lien is created on the title of real property as between a judgment creditor and a judgment debtor — at the time the judgment is entered or at the time the writ of fieri facias on that judgment is recorded. This timing makes a difference under federal bankruptcy law because certain transfers of the bankrupt debtor's property may be avoided if they occur within 90 days of the filing of the bankruptcy petition. Asserting that there is no clear, controlling precedent from this Court on this issue, the district court has certified the following questions to this Court:

> Whether as between a creditor, who obtains a judgment against a debtor's real property, and the judgment debtor, OCGA § 9-12-80 creates a lien on the debtor's real property or rather is a lien against the debtor's real property created at the time of recordation pursuant to

OCGA § 9-12-86. If such lien is created at the time of recordation, whether the effective date of creation of that lien relates back to the date of the judgment for purposes of establishing the date a creditor obtained a lien against the judgment debtor's real property.

We conclude for the reasons stated below that under Georgia law, as between the judgment creditor and judgment debtor, a lien on the title to real property is not created until the judgment is recorded, that the date of that lien is the date of recording, and the date of the lien does not relate back to the date the judgment was entered.

The parties stipulated to the following facts. On December 7, 2016, Synovus obtained a judgment against Kenneth and Jan Brownlee in an action filed in the Superior Court of Tift County, which was styled "First Community Bank of Tifton, a division of Synovus Bank [hereinafter 'Synovus'], Plaintiff v. Banner Grain and Peanut Company, Banner Hay Company, Inc., Kenneth Brownlee a/k/a Kenny Brownlee, and Jan Brownlee, Defendants." On December 22, 2016, the Tift County Superior Court issued a writ of fieri facias (the "Fi. Fa.") on that judgment,[1] and it was recorded on

---

[1] The Fi. Fa. was issued in the amount of $11,379,007.39.

the court's General Execution Docket ("GED"). On January 3, 2017, the Fi. Fa. was re-recorded on the Tift County GED to correct the spelling of the Brownlees' name by adding a handwritten "e" to the end of their respective last names. On January 25, 2017, the Fi. Fa. was recorded on the GED of the Superior Court of Worth County, where the Brownlees also owned real property. On March 21, 2017, Kenneth E. Brownlee and Janice J. Brownlee filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Georgia. On March 7, 2018, the Brownlees' bankruptcy case was converted to a Chapter 7 proceeding.

The record shows that Walter W. Kelley was appointed as the interim trustee for the Chapter 7 proceeding (the "Trustee"). On July 6, 2018, the Trustee filed an adversary proceeding asserting that the recordings of the Fi. Fa. in Tift and Worth Counties "were transfers of an interest in property of the Debtors by creation of a judicial lien under 11 U.S.C. § 547" ("Section 547") and seeking to avoid those transfers under Section 547 (b) (4) because the transfers were made

within 90 days of the Brownlees' filing their bankruptcy proceeding.

Section 547 (b) (4) (A) provides that, with certain exceptions, a bankruptcy trustee

> may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property— . . . made . . . on or within 90 days before the date of the filing of the [bankruptcy] petition[.]

11 USC § 547 (b) (4) (A).

The Trustee moved for partial summary judgment under this provision, and the same day, Synovus filed a motion for partial summary judgment as to the Brownlees' Tift County real property (the "Property"), arguing that the transfer of interest in that Property could not be avoided because the judgment against the Brownlees, which the Trustee argued created the lien, was entered on December 7, 2016, outside the 90-day lookback period under Section 547 (b) (4). The bankruptcy court granted the Trustee's motion and denied Synovus' motion, holding that "[u]nder Georgia law, only recording a judgment creates a judicial lien on real

property" and thus the transfer of interest in the Brownlees' real property occurred on the date the Fi. Fa. was recorded, not the date the judgment was entered. *In re Brownlee*, 593 BR 916, 923 (IV) (Bankr. M.D. Ga. 2018). Synovus appealed that ruling to the district court, leading to the certified questions posed here.

1. Turning to the district court's first question, we begin with Section 547, which allows a trustee to avoid transfers of property made on or within 90 days of the filing of the bankruptcy petition. Section 547 provides that, with one exception not applicable here, a transfer of an interest in real property is made "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time[.]" 11 USC § 547 (e) (2) (A).[2] Here, the parties do not dispute that the

---

[2] However, where a transfer is perfected more than 30 days after the transfer is made, Section 547 provides that the date of the transfer's perfection is considered to be the date the transfer was made for purposes of determining if the trustee may avoid the transfer. 11 USC § 547 (e) (2) (B). See also OCGA § 9-12-82 (providing that when executions of judgment are entered on the GED more than 30 days after judgment, "the lien shall date from such entry"). Synovus filed the judgment lien in Worth County on January 25, 2017, more than 30 days after the December 7, 2016 judgment date. Synovus thus conceded in the district court that even under its interpretation of the law, the

judgment lien on the Property was perfected when the Fi. Fa. was recorded on the GED in Tift County on December 22, 2016,[3] but they disagree on whether the transfer of interest in the real property was made as between the Brownlees and Synovus at the time the judgment was entered or at the time the Fi. Fa. was recorded.

To answer that question, we begin with the statute most closely on point. OCGA § 9-12-86 (b), provides that

> [n]o judgment, decree, or order or any writ of fieri facias issued pursuant to any judgment, decree, or order of any superior court, city court, magistrate court, municipal court, or any federal court shall in any way affect or become a lien upon the title to real property until the judgment, decree, order, or writ of fieri facias is recorded

---

Worth County property was transferred within the 90-day lookback period and the transfer date did not relate back to the date of judgment; therefore, Synovus did not move for summary judgment on that property.

[3] A transfer of real property is perfected for purposes of Section 547 "when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee[.]" 11 USC § 547 (e) (1) (A). See also OCGA § 9-12-82 ("As against bona fide purchasers for value without actual notice of a judgment . . . who have acquired a transfer or lien binding the defendant's property, no money judgment obtained in any court of this state or federal court in this state outside the county of the defendant's residence shall create a lien upon the property of the defendant located in any county other than that where obtained unless the execution issuing thereon is entered upon the general execution docket of the county of the defendant's residence within 30 days from the date of the judgment."). We do not address whether the recording of the Fi. Fa. constitutes a transfer under the terms of this provision.

in the office of the clerk of the superior court of the county in which the real property is located and is entered in the indexes to the applicable records in the office of the clerk. . . .

Synovus acknowledges OCGA § 9-12-86 but argues that statute must be read in conjunction with OCGA § 9-12-80, which provides that "[a]ll judgments obtained in the superior courts, magistrate courts, or other courts of this state shall be of equal dignity and shall bind all the property of the defendant in judgment, both real and personal, from the date of such judgments except as otherwise provided in this Code." According to Synovus, under § 9-12-80, judgments have effect from the date of judgment and bind the property of the defendant from that time.

In considering these two statutes, we rely on the "well-settled rule of statutory construction that a statute must be construed in relation to other statutes, and all statutes dealing with the same subject matter are construed together and harmonized wherever possible so as to give effect to the legislative intent." *Hastings v. Hastings*, 291 Ga. 782, 784 (732 SE2d 272) (2012) (citation and

punctuation omitted). See also *Hartley v. Agnes Scott College*, 295 Ga. 458, 462 (2) (b) (759 SE2d 857) (2014). Additionally, in reviewing the statutes,

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Bishop v. Goins*, 305 Ga. 310, 311 (824 SE2d 369) (2019) (citation and punctuation omitted).

Applying these principles to the statutes at issue here, we conclude that although § 9-12-80 sets out the general principle that a judgment "bind[s]" *all* the judgment debtor's property, "both real and personal," from the date it is entered, that general principle is expressly limited by the phrase "except as otherwise provided in this Code." The statute itself does not explicate the manner in which a judgment "bind[s]" the judgment debtor's property, and the exception language contemplates that other Code provisions may also address the effect of a judgment on a debtor's property. OCGA

§ 9-12-86 (b) directly addresses the effect of a judgment on a judgment debtor's *real* property when the judgment or writ of fieri facias is properly recorded, thus creating an exception to § 9-12-80's general rule.

The text of § 9-12-86 (b) could not be plainer in defining when a judgment lien is created on the title to real property, providing that "[n]o judgment . . . of any superior court . . . shall *in any way* affect or become a lien upon the title to real property until the judgment . . . is recorded . . . in . . . the county in which the real property is located[.]" (Emphasis supplied.) The phrase "in any way" is broad enough to encompass not only the effect of a recorded lien as to third parties, but also as to the parties to the judgment underlying the lien. Accordingly, we hold that as between the judgment creditor and the judgment debtor, no lien is created on the title to the debtor's real property until "the judgment, decree, order, or writ of fieri facias" is properly recorded as required by § 9-12-86.

This reading applies the plain text of the statutes to give effect to both. As we explained in *Nat. Bank of Ga. v. Morris-Weathers Co.*,

248 Ga. 798, 800 (286 SE2d 17) (1982), although the provision currently codified at OCGA § 9-12-86 (b)[4]

> causes a judgment to have no effect as a lien on real estate during the period in which it is not recorded, it does not mean that the judgment does not exist. The period between the taking of the judgment and its recording is merely a period of dormancy. When the judgment is recorded as provided for in the code, the dormancy ends and the judgment becomes effective as a lien on real estate.

And although the judgment has no effect on real property during the dormancy period, the judgment still binds the judgment debtor's property in other respects during that period. For example, where a defendant appeals the judgment, the judgment remains binding on the judgment debtor's real and personal property to the extent that it prevents the alienation of the property by the judgment debtor from the time the judgment is signed through the pendency of the appeal. See OCGA § 9-12-88.[5] Also, OCGA § 9-12-86 by its plain

---

[4] This provision was formerly codified at § 110-515 of the 1933 Georgia Code.

[5] OCGA § 9-12-88 provides:

In all cases in which a judgment is rendered and an appeal is entered from the judgment, the property of the defendant in

terms does not apply to a judgment debtor's personal property.

Synovus argues that OCGA § 9-12-86 should be read in context with similar statutes to establish priority as between the judgment creditor and bona fide purchasers for value and should not apply as between the judgment creditor and debtor. However, we note that the only statute that expressly addresses the validity of liens as between the parties to a judgment provides that "[n]othing in Code Sections 9-12-81 and 9-12-82 shall be construed to affect the validity or force of any deed, mortgage, judgment, or other lien of any kind as between the parties thereto." OCGA § 9-12-85. OCGA §§ 9-12-81 and 9-12-82 address the requirement of recording the liens in order to preserve the judgment creditor's priority over third parties acting in good faith and without notice and bona fide purchasers for value without notice. Based on the plain language of the text, we conclude that nothing in OCGA §§ 9-12-85, 9-12-81, or 9-12-82 limits the

judgment shall not be bound by the judgment except so far as to prevent the alienation by the defendant of his property between its signing and the signing of the judgment on the appeal, but the property shall be bound from the signing of the judgment on the appeal.

application of § 9-12-86 to disputes between bona fide purchasers for value and the judgment creditor.

2. Given our determination that the effective date of the lien is the date it is recorded, we turn to the district court's second question: whether "the effective date of creation of that lien relates back to the date of the judgment for purposes of establishing the date a creditor obtained a lien against the judgment debtor's real property." We find no support in the Georgia statutes or in the case law for such a result.

Synovus points to our decision in *Morris-Weathers* to argue that as between the parties to the judgment, the effective date relates back to the date of judgment. That case involved the competing claims of three judgment creditors, all of whom obtained their judgments during the same term of court and all of whom sought to recover excess proceeds from the sale of the judgment debtor's land. *Morris-Weathers*, 248 Ga. at 799. Under OCGA § 9-12-87 (a), "[a]ll judgments signed on verdicts rendered at the same term

of court shall be considered, held, and taken to be of equal date."[6] However, the Court of Appeals had held that in accordance with what is now codified at OCGA § 9-12-86, "the priorities among competing lienholders as to the real property in the present case must be based upon the time and date of the recording[,]" and the court determined priority among the three judgment creditors accordingly. *Morris-Weathers Co. v. Decatur Fed. S & L Assn.*, 158 Ga. App. 177, 178 (279 SE2d 482) (1981).

On certiorari review of that decision, the single issue before this Court was "whether the Court of Appeals erred in holding that [§ 9-12-86] makes the date of recordation of a judgment on the general execution docket the single date and sole criterion for measuring priorities between competing judgment lien holders and the sole criterion for determining the effect of a judgment on the title to real property." *Morris-Weathers*, 248 Ga. at 798-99. After first concluding that no lien on real property was created until the deed

---

[6] At the time that *Morris-Weathers* was decided, this provision was codified at Code 1933 § 110-505. Although renumbered, the statutory text has remained unchanged.

was recorded, we held "that for priority purposes, the judgment then relates back to the date of its rendition and shall be considered of equal date with other perfected liens arising from judgments on verdicts rendered at the same term of court." Id. at 800. That holding is limited by the facts of the case and the express qualifier "for priority purposes," and we interpret it to mean that although the liens were not created until they were recorded, the Court would look back to the judgment dates to determine priority among the competing same-term judgment holders under § 9-12-87. As we noted: "To hold otherwise would reinstitute the race to the courthouse by competing judgment creditors." Id. Therefore, we do not read *Morris-Weathers* as holding that as between the judgment creditor and debtor, the date of the lien relates back to the date of judgment.[7]

---

[7] Although Synovus also cites *Roberson v. Roberson*, 199 Ga. 627, 630 (3) (34 SE2d 836) (1945), and *Crosby v. King Hardware Co.*, 109 Ga. 452, 453-54 (6) (34 SE 606) (1899), which hold that a judgment becomes binding as between the parties on the date it is entered, those cases were decided before the legislature enacted what is now OCGA § 9-12-86 in 1958 to establish that a lien on the title to real property is created at the time of recordation and has no effect on the property's title before that time. See Ga. L. 1958, p. 379, §§ 1-5. Accordingly, those cases are not applicable to our analysis.

*Certified questions answered. All the Justices concur*.

DECIDED AUGUST 24, 2020.

Certified question from the United States District Court for the Middle District of Georgia.

*Moore, Clarke, Duvall & Rodgers, David A. Garland, Stephan A. Ray*, for appellant.

*Kelley Lovett Blakey & Sanders, Walter W. Kelley, Thomas D. Lovett, Thomas D. Lovett III*, for appellee.