**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 1, 2021**

# In the Court of Appeals of Georgia

A20A1935. IN RE ESTATE OF JENKINS.

McFADDEN, Chief Judge.

This appeal concerns a probate court order that effectively prohibits the conservator of an adult ward's estate from disbursing more than $120,000 of the ward's annual income without court authorization. Such an order is inconsistent with the authority generally given conservators in the Act governing conservators of adult wards, OCGA §§ 29-5-1 et seq. ("the Act"). But the Act authorizes probate courts, in the exercise of their discretion, to enter orders inconsistent with the authority otherwise provided to conservators. The record before us does not establish that the probate court abused her discretion by entering the inconsistent order on appeal in this case. So we affirm. We do not reach the appellant conservator's separate

argument regarding the validity of a standard probate court form, because the probate court made no ruling on that issue below.

1. *Facts and procedural history.*

The ward, Shaun A. Jenkins, Jr., who is now 30 years old, sustained profound injuries as an infant as the result of medical malpractice. His injuries left him with permanent cognitive and physical disabilities. Jenkins received a large financial settlement for his injuries and, as of the time of the order on appeal, he had an annual income exceeding $337,000.

Appellant Gary Sams has served as the conservator of Jenkins's estate since 1995, when Jenkins was a minor. He currently serves in that role pursuant to letters of conservatorship that the probate court issued in 2008 after Jenkins turned 18 years old.

When he was appointed conservator in 2008, Sams gave a conservator's bond as required by OCGA § 29-5-40 (a). He also filed an inventory of Jenkins's property and a plan for managing, expending, and distributing the property as required by OCGA § 29-5-30 (a). In each subsequent year, Sams submitted an annual return, which under the Act consists of

a statement of the receipts and expenditures of the conservatorship during the [preceding] year . . . , an updated inventory consisting of a statement of the assets and liabilities of the estate . . . , an updated plan for managing, expending, and distributing the ward's property, a note or memorandum of any other fact necessary to show the true condition of the estate, and a statement of the current amount of the bond.

OCGA § 29-5-60 (a). He filed the inventory and asset management plan using Georgia Standard Probate Court Form 58. That form required Sams to provide detailed information about Jenkins's anticipated average monthly income and average monthly expenses for the upcoming year. See generally Uniform Probate Court Rule 5.9 (concerning adoption and use of standard forms in probate courts).

In every asset management plan filed by Sams since his 2008 appointment, Sams, selecting a pre-printed option on the standard probate court form, asked the probate court to permit him "to disburse the ward's income as estimated [in the filing] for the support of the ward and those persons who are entitled to be supported by the [w]ard." Sams chose this opinion instead of another option requesting leave to disburse a specified monthly amount not only from income but also from principal of the ward's estate. Despite Sams's requests, in all but two of those years the probate court did not permit Sams to disburse Jenkins's income. Instead, the probate court

3

entered orders restricting Sams's spending to a specified monthly amount less than Jenkins's income. Those lesser monthly amounts usually matched the estimated monthly expenses that Sams included in his filings.

In 2019, Sams filed an annual return showing that during one month he made disbursements exceeding the court-ordered monthly amount to purchase a disabled-accessible van for Jenkins. That purchase did not cause Sams to disburse more than Jenkins's annual income. But the probate court found that the annual return showed an "encroachment on conservatorship funds without prior court approval" and ordered Sams to appear at a January 17, 2000 hearing on the matter. Ahead of that hearing, Sams submitted a brief in which he argued to the probate court that the Act governing conservators of adult wards authorized him to make reasonable disbursements from Jenkins's annual income without being restricted to a monthly budget.

Testimony was presented at the January 17, 2000 hearing, and the probate court subsequently entered a written order based in part on that testimony. In that order, the probate court stated that she approved the asset management plan submitted by Sams. But other rulings in that order are inconsistent with the asset management plan submitted by Sams. Although Sams sought leave to distribute Jenkins's annual

4

income, the probate court ordered that Sams's monthly disbursements be limited to $17,000, an amount significantly less than Jenkins's estimated monthly income of more than $28,000. The probate court further ordered that Sams deduct his statutory commission and other administrative fees from the $17,000 he was permitted to disburse monthly on Jenkins's behalf. We construe this order to be an approval of the asset management plan as limited by the probate court's more restrictive rulings.

Sams appeals from this latest probate court order. He asserts that the probate court erred "by exceeding [her] statutory authority to limit Sams'[s] discretion to expend all annual income of his [w]ard without prior probate court approval if the expenditures are reasonable and in the [w]ard's best interest" and "by abusing [her] discretion by arbitrarily and capriciously restricting Sams to spending an amount less than the income of his [w]ard in violation of the [Act]." He also asks that we "declare [Georgia Standard Probate Court Form 58] invalid in its current format."

As detailed below, we agree with Sams that the governing Act generally gives a conservator the authority to disburse the full amount of the adult ward's income without court order. We also agree that the probate court's order in this case is inconsistent with that authority. So we are concerned that the probate court's decision to infringe on the conservator's statutory authority to spend the ward's income on the

5

ward's behalf is founded, not on an individualized exercise of discretion, but on a routine practice that the court has adopted. But the Act does give probate courts discretion to enter orders inconsistent with the authority otherwise given to conservators. The order on appeal is such an order. And the appellate record does not include the hearing testimony that the probate court considered in deciding to limit Sams's monthly disbursements to $17,000. So Sams has not shown by the appellate record that the probate court abused her discretion in entering that specific order. Finally, we decline Sams's request to declare the standard probate court form invalid, because the probate court made no ruling on that issue.

2. *A conservator's authority under the Act.*

Sams argues that the Act gives a conservator the authority to disburse a ward's annual income without prior probate court approval so long as those disbursements are reasonable and in the ward's best interest. We agree with Sams that this generally is the case. But we hold that the Act authorizes probate courts, in the exercise of their sound discretion, to enter orders limiting that authority.

In interpreting the Act's provisions,

> we apply the fundamental rules of statutory construction that require us
> to construe the statute according to its terms, to give words their plain

6

and ordinary meaning, and to avoid a construction that makes some language mere surplusage. We must also seek to effectuate the intent of the Georgia legislature. OCGA § 1-3-1 (a). In this regard, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.

*In re Estate of Gladstone*, 303 Ga. 547, 549 (814 SE2d 1) (2018) (citation omitted).

The Act pertinently provides that,

> [u]nless inconsistent with the terms of any court order relating to the conservatorship, *a conservator without court order may[ ] . . . [m]ake reasonable disbursements from the annual income* or, if applicable, from the annual budget amount that has been approved by the court pursuant to Code Section 29-5-30 for the support, care, education, health, and welfare of the ward and those persons who are entitled to be supported by the ward.

OCGA § 29-5-23 (a) (1) (emphasis supplied). It gives a conservator similar authority to enter into contracts for labor or service, OCGA § 29-5-23 (a) (2), and to borrow money and bind the ward's property. OCGA § 29-5-23 (a) (3). The language in these provisions referring to a court-approved "annual budget amount" does not apply to the facts of this case. That language concerns budgets "for the expenditure of funds *in excess of the anticipated income* from the [ward's] property[.]" OCGA § 29-5-30

7

(c) (emphasis supplied). In this case, Sams has not sought to disburse funds in excess of the anticipated income from Jenkins's property, so of course the probate court has not authorized a budget for the expenditure of such funds.

The Council for Probate Court Judges, which submitted an amicus curiae brief in this case,[1] does not appear to disagree with this construction of OCGA § 29-5-23 (a) (1). In discussing Sams's arguments related to that provision, the Council stated that "the probate court does not have the authority to disapprove an [asset management plan] if [the plan] demonstrates that the proposed spending is reasonable and for the benefit of the ward."

But the plain language of OCGA § 29-5-23 also permits a probate court to enter orders inconsistent with the authority otherwise given to a conservator. As recited above, that Code section authorizes a conservator to make reasonable disbursements from a ward's annual income without court order "[u]nless inconsistent with the terms of any court order relating to the conservatorship[.]" OCGA § 29-5-23 (a) (1). We have construed similar language in the statute governing guardians of adult wards to provide broad authority to the guardian and broad oversight to the

_____

[1] We appreciate the Council's submission. Because there is no appellee in this case, the Council's brief and Sams's response to it helped clarify the issues on appeal.

8

probate court. *In re Estate of Wertzer*, 330 Ga. App. 294, 298 (1) (765 SE2d 425) (2014). Applying the same construction, the statute governing conservators of adult wards provides broad authority to the conservator and broad oversight to the probate court.

The default position under OCGA § 29-5-23 (a) (1) is for the conservator, rather than the probate court, to make decisions regarding how to disburse the ward's annual income. As Sams asserts, the Act affords a conservator wide latitude in fulfilling his responsibilities. See, e.g., OCGA § 29-5-22 (a) (noting conservator's role as fiduciary who must "make decisions regarding the ward's property"). The money or property in the estate belongs to the ward, and it is the conservator's role to use the ward's income to satisfy the ward's needs. Certainly, the probate court should not usurp that role and impose limitations upon the conservator that would force the conservator to stint on the ward's needs when it would be in the ward's best interest to use the ward's annual income to satisfy those needs. To impose such a limitation would be an abuse of discretion by the probate court. See generally *Cruver v. Mitchell*, 289 Ga. App. 145, 146 (1) (a) (656 SE2d 269) (2008) (determination of adult ward's best interest is matter for probate court's discretion).

But the Act also imposes limits on the conservator, requiring, among other things, that the conservator's "plan for managing, expending, and distributing the ward's property . . . be based on the actual needs of the ward and take into consideration the best interest of the ward." OCGA § 29-5-30 (c). For example, as both Sams and the Council assert in their briefs, the probate court is not compelled to approve an asset management plan that shows waste. By providing that the probate court may enter orders inconsistent with the authority otherwise given to a conservator in OCGA § 29-5-23 (a), the Act acknowledges that there may be instances in which it is appropriate for a probate court to limit a conservator's disbursements, even though they are within the ward's annual income.

3. *The probate court's ruling in this case.*

The question in this case is whether the probate court abused her discretion in limiting Sams's monthly disbursements to $17,000, which effectively prevented Sams from having access to more than $120,000 of Jenkins's annual income to use on Jenkins's behalf without court order.

Sams argues that the probate court erred in entering this particular order because the limitations imposed therein were arbitrary and capricious. In support of this argument he points out: that the probate court gave no reason for limiting

10

disbursements; that she did not make findings that the proposed disbursements were unnecessary, unreasonable, or not in Jenkins's best interest; that the inconsistent order is not an outlier but is the last of a series of orders in which the probate court repeatedly limited Sams's expenditures to less than Jenkins's annual income, sometimes significantly so; that the $17,000 monthly limit imposed by the probate court is more than $10,000 less than Jenkins's average monthly income; and that the order further reduces the amount of Jenkins's income that can be spent on his support by requiring commissions and costs associated with the administration of the conservatorship to be included in the $17,000 monthly amount.

We find many of Sams's arguments compelling. The appellate record before us offers no explanation for why, in most of the years preceding the order on appeal, the probate court repeatedly chose to constrain Sams from exercising the full breadth of authority contemplated by the Act. Although Sams describes all of the prior-year limitations as arbitrary, as detailed above, most of the prior-year limitations were tied to the estimated average monthly expenditures included in the annual filings. But nothing in the record indicates that the probate court, in those earlier orders, considered whether it was in Jenkins's best interest to permit Sams the full extent of his authority to disperse Jenkins's annual income, rather than routinely limiting

11

Sams's authority to whatever amount of monthly expenses was estimated in the annual filing.

But the order on appeal arises within a different context than those earlier orders. Before entering that order, the probate court expressed concerns about expenditures Sams had made the prior year and held a hearing to address those concerns. The probate court based her order limiting Sams's authority, in part, on "the testimony provided at the hearing." And, for the first time, the probate court limited Sams's monthly disbursements to an amount different — and higher — than Jenkins's estimated monthly expenditures.

Unfortunately, however, the appellate record in this case does not reveal what testimony or other evidence was received by the probate court at the hearing before she entered the order on appeal. The appellate record contains neither a transcript nor legal substitute reflecting that testimony. "Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and the courts presume they have properly discharged their official duty." *Carson v. State*, 241 Ga. 622, 624-625 (2) (247 SE2d 68) (1978) (citations and punctuation omitted). This presumption extends to court proceedings. *Holmes v. Roberson-Holmes*, 287 Ga. 358, 361 (1) (695 SE2d 586) (2010). Sams has pointed to no

authority requiring the probate court to make express written findings in support of her decision to enter an order inconsistent with the authority otherwise given a conservator by OCGA § 29-5-23 (a), and "[i]n accordance with the presumption of regularity of court proceedings, we must assume in the absence of a transcript that there was sufficient competent evidence to support the [probate] court's findings [implicit in her order]." *Holmes*, 287 Ga. at 361 (1). Cf. *Crook v. Crook*, 293 Ga. 867, 869-870 (2) (750 SE2d 334) (2013) (presumption of regularity does not apply where trial court failed to make written findings mandated by statute).

As the appellant, Sams carries the burden of showing error by the appellate record. *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999). "[W]hen that burden is not met, the judgment is assumed to be correct and will be affirmed." Id. Under the circumstances of this case, although we are concerned by the probate court's repeated decisions over the years to enter orders inconsistent with the authority given to Sams by OCGA § 29-5-23 (a) (1) to disburse Jenkins's annual income without court order, Sams has not met his burden as appellant of showing by the record that the probate court erred in the particular order on appeal. So we must affirm.

4. *Validity of standard probate court form.*

13

Sams requests that we declare invalid Georgia Standard Probate Court Form 58, arguing that it forces him to a submit a "budget" that the Act does not require and to ask permission to exercise authority that the Act already affords him. We do not address this request, or the arguments Sams makes in support of it, because we are a court for the correction of trial court error and Sams has not enumerated any ruling by the probate court in connection with the use or validity of this form. See *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002).

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur*.