312 Ga. 416
FINAL COPY

S20G1292.  CL SNF, LLC et al. v. FOUNTAIN.

MCMILLIAN, Justice.

Minnie Fountain, as guardian for her adult nephew, Leroy Wiggins,[1] filed claims against Wiggins's skilled nursing facility and its management — CL SNF, LLC d/b/a Clinch Healthcare Center ("CHC"); RWC Healthcare, LLC; PWW Healthcare, LLC; and Beacon Health Management, LLC (collectively, "Clinch") — after Wiggins allegedly was assaulted while in their care. Clinch moved to compel arbitration of the claims, which the trial court denied. The Court of Appeals affirmed the trial court's ruling based on a determination that neither the letters of guardianship issued by the probate court nor the provisions of the Georgia Code pertaining to guardians of adult wards, see OCGA § 29-4-1 et seq. (the "Guardianship Code"), gave Fountain the authority to enter into a

---

[1] Wiggins is now deceased.

pre-dispute arbitration agreement on Wiggins's behalf. We granted Clinch's petition for certiorari and now reverse the decision by the Court of Appeals in *CL SNF, LLC v. Fountain*, 355 Ga. App. 176, 183 (1) (843 SE2d 605) (2020), because we conclude that the Guardianship Code grants a guardian authority to enter into a binding pre-dispute arbitration agreement where the exercise of such power is reasonably necessary to provide adequately for the ward's support, care, health, and welfare.

The record demonstrates that the Probate Court of Clinch County issued "Letters of Guardianship of Adult Ward" naming Fountain as Wiggins's legal guardian on November 15, 2006, charging her with responsibility for Wiggins's care, subject to applicable law and further orders of the court. In March 2014, Wiggins was admitted as a resident at CHC, a skilled nursing facility, and in connection with his admission, Fountain signed a "Facility Admission Agreement" containing an arbitration clause. At

the same time,[2] Fountain also signed a separate, three-page binding "Arbitration Agreement," which directed that all claims associated with care provided by Clinch be submitted to arbitration[3] and expressly stated that Wiggins had the right to seek legal counsel concerning the agreement; that the signing of the agreement was not a precondition to Wiggins's admission to, or his receipt of

---

[2] Although the Facilities Admission Agreement and the Arbitration Agreement show different dates, Fountain submitted an affidavit averring that she signed the agreements at the same time and that the date on the Arbitration Agreement is incorrect.

[3] In pertinent part, the Arbitration Agreement provided:

Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's Admission Agreement, including the interpretation of either, or the Resident's stay at, or the care or services provided by, the Facility, or any acts or omissions in connection with such care or services, . . . whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages, and whether sounding in breach of contract, tort, or breach of statutory or regulatory duties (including, without limitation, any claim based on an alleged violation of the state bill of rights for residents of long-term care facilities or federal resident's rights, any claim based on negligence, any claim for damages resulting from death or injury to any person arising out of care or service rendered by the Facility or by any officer, agent, or employee thereof acting within the scope of his or her employment, any claim based on any other departure from accepted standards of health care or safety, or any claim for unpaid nursing home charges), irrespective of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted for arbitration.

services from, CHC; and that the agreement "may be revoked by written notice to the Facility from the Resident within thirty (30) days of signature."

In March 2019, Fountain filed a lawsuit asserting various claims against Clinch arising out of alleged acts of sexual battery committed against Wiggins by another CHC resident. Clinch responded with an answer denying liability and a motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act, 9 USC §§ 1–16. Fountain opposed the motion, and the trial court denied it, finding that although Fountain had the authority to execute the arbitration agreements on Wiggins's behalf, the arbitration provision in the Facility Admission Agreement was unenforceable because it violated federal law by giving Clinch, as a precondition to Wiggins's admission to CHC, additional consideration over and above the Medicaid payments Clinch received for Wiggins's care. See 42 USC § 1396r (c) (5) (A) (iii).[4] The

---

[4] Under that provision,

4

trial court further concluded that the separate Arbitration Agreement was not enforceable because it was (1) commercially unreasonable, failing to advance the purpose of the Admission Agreement, which was to provide nursing home services for payment, and (2) unconscionable, based on the court's finding that the parties did not have an equal obligation to arbitrate under its terms.

After the trial court certified its order for immediate review, the Court of Appeals granted Clinch's application for interlocutory appeal. Although the Court of Appeals affirmed the denial of Clinch's motion to compel arbitration, it based its decision on a determination that neither the letters of guardianship nor the Guardianship Code granted Fountain the authority to bind Wiggins

[w]ith respect to admissions practices, a nursing facility must — . . . in the case of an individual who is entitled to medical assistance for nursing facility services, not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this [subchapter], any gift, money, donation, or other consideration as a precondition of admitting (or expediting the admission of) the individual to the facility or as a requirement for the individual's continued stay in the facility.

42 USC § 1396r (c) (5) (A) (iii).

5

to the pre-dispute Arbitration Agreement. See *Fountain*, 355 Ga. App. at 183 (1).[5] We granted certiorari, asking the parties to address whether the Court of Appeals correctly concluded that a legal guardian of an adult ward appointed by a probate court and acting under letters of guardianship did not have the authority to enter into a pre-dispute arbitration agreement on behalf of the ward.

We start that analysis by examining the letters of guardianship issued by the probate court. See OCGA § 29-4-13 (setting out requirements for order granting guardianship). In that order, the probate court found that Wiggins was in need of a guardian, appointed Fountain as the guardian, and provided, among other things, that it was the guardian's duty "to see that the ward is adequately fed, clothed, sheltered and cared for, and that the ward

---

[5] The Court of Appeals noted that Clinch "[did] not enumerate as error the trial court's determination that the arbitration clause in the Facility Admission Agreement was unenforceable," *Fountain*, 355 Ga. App. at 178 n.1, and it therefore limited its analysis to the enforceability of the separate Arbitration Agreement. Also, because the Court of Appeals concluded that Fountain lacked any authority to enter into the Arbitration Agreement on Wiggins's behalf, it did not address the trial court's determination that the Arbitration Agreement in this case was unenforceable on other grounds. See id. at 184 (2).

receives all necessary medical attention." The letters also informed Fountain that her "authority to act pursuant to these [l]etters is subject to applicable statutes and to any special orders entered in this case."[6] The letters of guardianship do not explicitly address whether Fountain had the authority to enter into a pre-dispute arbitration agreement on Wiggins's behalf.

Because the letters of guardianship incorporate the "applicable statutes," we now turn to the relevant provisions of the Guardianship Code[7] to determine whether Fountain had the authority to enter into a pre-dispute arbitration agreement. We "start with the premise that we must afford the statutory text its plain and ordinary meaning." *Smallwood v. State*, 310 Ga. 445, 452 (3) (851 SE2d 595) (2020) (citation and punctuation omitted). "To this end, we must view the statutory text in the context in which it

---

[6] The record does not include any special orders issued in connection with the letters of guardianship, and the parties do not refer to any such orders that may be relevant to the issues on appeal.

[7] The parties do not point to any other statutory provision as bearing on the issue of whether a guardian has the authority to enter into a pre-dispute arbitration agreement under the circumstances of this case.

appears," *Thornton v. State*, 310 Ga. 460, 462 (2) (851 SE2d 564) (2020) (citation and punctuation omitted), and we rely on the "well-settled rule of statutory construction that a statute must be construed in relation to other statutes, and all statutes dealing with the same subject matter are construed together and harmonized wherever possible so as to give effect to the legislative intent." *Synovus Bank v. Kelley*, 309 Ga. 654, 657 (1) (847 SE2d 592) (2020) (citation and punctuation omitted). Moreover, "when . . . confronted with a statute having several parts, we must endeavor to harmonize those parts so as to give a sensible and intelligent effect to each part." *Thornton*, 310 Ga. at 463 (2) (citation and punctuation omitted).

OCGA § 29-4-22 sets out the general duties of a guardian and states that "[e]xcept as otherwise provided by law or by the court, a guardian shall make decisions regarding the ward's support, care, education, health, and welfare." OCGA § 29-4-22 (a). The statute also directs that a guardian "shall consider the expressed desires and personal values of the ward" to the extent they are known and

8

"shall at all times act as a fiduciary in the ward's best interest and exercise reasonable care, diligence, and prudence." OCGA § 29-4-22 (a). Consistent with the broad authority granted in subsection (a) of the statute, subsection (b) describes other duties that the guardian shall perform, including "[a]rrang[ing] for the support, care, education, health, and welfare of the ward, considering the ward's needs and available resources." OCGA § 29-4-22 (b) (6). A second statutory provision — OCGA § 29-4-23 — outlines what powers a guardian may exercise "[u]nless inconsistent with the terms of any court order relating to the guardianship." Among other things, the guardian may "[e]xercise those other powers reasonably necessary to provide adequately for the support, care, education, health, and welfare of the ward." OCGA § 29-4-23 (a) (4). See also OCGA § 29-4-23 (a) (1). These statutes, when construed together, impose significant duties on the guardian to make arrangements for the ward's care and grant the guardian expansive, though not unlimited, powers to do so. See generally *In re Estate of Wertzer*, 330 Ga. App. 294, 298 (1) (765 SE2d 425) (2014).

Notably, the Guardianship Code does not expressly address whether a guardian may enter into a pre-dispute arbitration agreement, but does reference alternative dispute resolution as a procedure that a guardian may seek in connection with providing care for the ward. See OCGA § 29-4-23 (a) (3) (A guardian may "[b]ring, defend, or participate in legal, equitable, or administrative proceedings, including alternative dispute resolution, as are appropriate for the support, care, education, health, or welfare of the ward in the name of or on behalf of the ward."). Clinch asserts that the power to "bring" an arbitration proceeding necessarily implies that the guardian may enter into a pre-dispute arbitration agreement because binding arbitration cannot occur without the parties' agreement. But as recognized by the Court of Appeals, a guardian may bring a legal proceeding and then agree to arbitration, so the authority to enter into a pre-dispute arbitration agreement is not necessarily implied to give effect to this provision, see *Fountain*, 355 Ga. App. at 183 (1), and we see nothing in the text of this provision otherwise requiring that such power be implied.

10

However, we need not definitively say whether OCGA § 29-4-23 (a) (3) authorizes a guardian like Fountain to enter into a pre-dispute arbitration agreement under these circumstances, because we conclude that such a power is one that is "reasonably necessary" to adequately provide for the ward under OCGA § 29-4-23 (a) (4). In determining whether a guardian's action is authorized under OCGA § 29-4-23 (a) (4), we read the phrase "reasonably necessary" as modifying the phrase "those other powers." See *Thornton*, 310 Ga. at 467 (3) (under rules of statutory construction, a qualifying phrase is ordinarily read to modify the noun or phrase that it immediately follows). So the question centers around what other powers are reasonably necessary to provide adequately for the ward's care.

It is undisputed that the guardian has the duty to make decisions about the ward's care and in connection with that duty, a guardian is required to "arrange for the support, care, . . . health, and welfare of the ward." OCGA § 29-4-22 (b) (6). See also OCGA § 29-4-22 (a). No one questions that Fountain, as guardian, had the authority to enter into the Facility Admission Agreement to allow

11

Wiggins to receive skilled nursing care from Clinch. But included in that agreement is an arbitration clause, and if we accept Fountain's argument that she had no power to enter into a pre-dispute arbitration agreement because it was not necessary to secure care for Wiggins, then a guardian considering a contract proposed by a care provider that includes terms later determined to be not absolutely necessary to the provision of such services would be able to avoid those terms of the contract even though the guardian in the exercise of her fiduciary duties may have concluded at the time of contracting to agree to those terms. Alternatively, if the guardian recognizes at the outset that the term is not absolutely necessary, the guardian would be required to return to the probate court for permission to enter into such agreement or, at least, into any unnecessary contractual provisions.[8] These examples illustrate the

---

[8] Even though Fountain also signed the separate Arbitration Agreement, we do not see that whether the arbitration clause was included in the Facilities Admission Agreement or a separate agreement makes a difference to the analysis in this case. The Arbitration Agreement refers to the Admission Agreement and provides that it governs any claims or controversies arising out of the Admission Agreement. See generally *Rizk v. Jones*, 243 Ga. 545, 545-46

difficulties of Fountain's position and why, consistent with the text of the statute, a guardian arranging for care for the ward reasonably should, in the exercise of her fiduciary duties, have the power to consider whether to enter into terms that are being presented by the care-provider. With respect to the pre-dispute arbitration agreement in this case, we cannot say as a matter of law that a guardian may never properly decide that entering a pre-dispute arbitration agreement would serve the ward's needs, any more than we can say as a matter of law that a competent person may never find it prudent to enter into such a contract.[9] Thus, we conclude that the power to enter into a pre-dispute arbitration agreement under these circumstances is reasonably necessary to the guardian's

---

(255 SE2d 19) (1979) (per curiam) (two or more written agreements executed simultaneously in the course of the same transaction, some of which expressly refer to the others, should be read and construed together); *Hardin v. Great Northern Nekoosa Corp.*, 237 Ga. 594, 597 (229 SE2d 371) (1976) ("Where instruments are executed at the same time in the course of the same transaction, they should be read and construed together.").

[9] The contrary holding by the Court of Appeals, which we now reverse, could also apply to many other contracts for the ward's care, education, health, and welfare that may include pre-dispute arbitration clauses and could impair the guardian's ability to perform his duty to act in the ward's best interests in a diligent and prudent manner.

authority to arrange for care for the ward, and Fountain had the power to execute a pre-dispute arbitration agreement on the ward's behalf in connection with the provision of care.

Fountain asserts that the general "other powers reasonably necessary" provision of the Guardianship Code does not apply because the specific provision referring to alternative dispute resolution does not expressly permit a guardian to enter into a pre-dispute arbitration agreement, so that power cannot be read into the general provisions. She cites the principle that "[w]here two statutes are in conflict, . . . the more specific statute governs over the more general one." *Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019). See also *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993). But the alternative dispute resolution provision is *silent* on pre-dispute arbitration agreements, so there is no conflict between the specific and general statutes, and this principle does not apply. See *Estes v. Jones*, 203 Ga. 686, 687 (2) (48 SE2d 99) (1948) (no conflict between statutes and constitution where constitution was

14

silent as to subject matter of statutes); *Hines v. Wingo*, 120 Ga. App. 614, 616 (3) (171 SE2d 905) (1969) (no conflict between statutes where one statute was silent as to subject of the other).

Accordingly, because the Court of Appeals erred in determining that Fountain had no authority under the Guardianship Code to enter into the pre-dispute Arbitration Agreement with Clinch in connection with Wiggins's admission to CHC, we reverse and remand the case for further consideration in light of this opinion.[10]

*Judgment reversed and case remanded. All the Justices concur, except Peterson, J., disqualified.*

---

[10] We express no opinion on the issues of whether Fountain's decision to sign the agreement was a proper exercise of her discretion and fiduciary duties as a guardian or whether the Arbitration Agreement is otherwise unenforceable.

Decided September 21, 2021.

Certiorari to the Court of Appeals of Georgia — 355 Ga. App. 176.

*Quirk & Quirk, Kevin E. Quirk, Kellie T. Holt*, for appellants.

*Bondurant Mixson & Elmore, Michael B. Terry, Jennifer L. Peterson; Wagner Hughes, Gretchen H. Wagner, Katherine G. Hughes; Bethany L. Schneider*, for appellee.

*Arnall Golden Gregory, Jason E. Bring, William J. Rissler, Kara G. Silverman*, amici curiae.