297 Ga. 15
FINAL COPY

S14G1891.  LEGACY ACADEMY, INC. et al. v. MAMILOVE, LLC et al.

THOMPSON, Chief Justice.

This appeal arises out of an action brought by the owner of a franchise, Mamilove, LLC, and its officers, Michele and Lorraine Reymond (collectively "the Reymonds"), in which they sought rescission of a franchise agreement and damages for claims related to their negotiations for, and ultimate purchase of, a daycare franchise. The named defendants are the franchisor, Legacy Academy, Inc., and its officers, Frank and Melissa Turner (collectively "Legacy").

A review of the evidence presented at trial demonstrates that in 2001, Michele and Lorraine Reymond, sisters, approached the Turners and expressed an interest in purchasing a Legacy Academy Center daycare franchise. Michele testified that in July 2001, Legacy gave her and her sister an earnings claim purporting to state the historical earnings of existing franchisees. This earnings claim reflected that in the first two years after purchasing a franchise, a

franchisee could expect to receive net income of $260,000 and $440,000, respectively. The Turners also discussed with the sisters an available property on Old Peachtree Parkway, suggesting it would be a good location for their franchise.

Subsequently, the Reymond sisters created Mamilove, LLC, an entity established for the purpose of holding title to the real property upon which they intended to build their Legacy Academy franchise and the building and personal property used in the operation of their franchise. In September 2001, Michele, who had a master's degree in business administration and was working for a large corporation, and Lorraine, who was working for WebMD, again met with the Turners and were given an offering circular and a franchise agreement (the Agreement) for their signature. They signed the Agreement the same day without reading either it or the offering circular. Ten years later, they brought the action at issue in this appeal, alleging that Legacy fraudulently induced them to sign the Agreement by providing false information about the historical earnings of existing Legacy Academy franchisees.[1] They sought to rescind the

---

[1] The Reymonds' daycare center opened in November 2002. At trial, they claimed the center lost $212,300 in the first year of operation and had net earnings of $103,692 in 2004, but that by 2009, net earnings dropped to $28,299.

2

Agreement and to recover damages for claims based on allegations of fraud, negligent misrepresentation, and violation of both OCGA § 51-1-6[2] and the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"),[3] OCGA § 16-14-1 et seq. A jury trial ensued, and after the close of evidence, the trial court denied Legacy's motion for directed verdict as to all of the Reymonds' claims.[4] The jury found in favor of the Reymonds, issuing a general verdict awarding them $750,000 in compensatory damages, $375,000 in additional RICO damages, and $30,000 in costs of litigation. Legacy appealed, raising various challenges, including a challenge to the trial court's ruling on its motion for directed verdict. The Court of Appeals affirmed, <u>Legacy Academy, Inc. v. Mamilove, LLC</u>, 328 Ga. App. 775 (761 SE2d 880) (2014), and we

---

[2] OCGA § 51-1-6 states that "[w]hen a law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." The Reymonds alleged Legacy failed to make certain required disclosures in violation of 16 CFR § 436 and that Legacy's failure to comply with the duties imposed by this Federal Trade Commission regulation caused them damage.

[3] The Reymonds predicated their RICO claim on allegations that Legacy committed acts of theft by conversion (OCGA § 16-8-4), theft by deception (OCGA § 16-8-3), theft by taking (OCGA § 16-8-2), and falsification, concealment, and fraudulent financial documentation (OCGA § 16-10-20).

[4] Consistent with this ruling, the trial court also denied Legacy's motion for judgment notwithstanding the verdict. See OCGA § 9-11-50 (b).

granted a writ of certiorari to determine whether the Court of Appeals erred when it affirmed the trial court's denial of a directed verdict on the Reymonds' claims for rescission, fraud, negligent misrepresentation, and violation of the Georgia RICO statute. Because we find Legacy was entitled to a directed verdict as to these claims, we reverse the decision of the Court of Appeals in part.

1. A motion for directed verdict may be granted only where the evidence demands the particular verdict and fails to disclose any material issue for jury resolution. See OCGA § 9-11-50 (a). Legacy argues the trial court erred by denying its motion for directed verdict on the claim for rescission based on fraudulent inducement because this claim was precluded as a matter of law by the Reymonds' failure to read the Agreement.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." Ekeledo v. Amporful, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007). Having elected to seek rescission and pursue a claim for fraud, the Reymonds were required to prove that Legacy through misrepresentation, act, or artifice intentionally

4

induced them to sign the Agreement and that they justifiably relied on the misrepresentation, act, or artifice, being "reasonably diligent in the use of the facilities at [their] command." Lewis v. Foy, 189 Ga. 596, 598 (6 SE2d 788) (1940). See Markowitz v. Wieland, 243 Ga. App. 151, 153 (532 SE2d 705) (2000). They attempted to meet their burden through the presentation of evidence showing inaccuracies in the earnings claim provided by Legacy prior to the Agreement's execution and their reliance on these representations in deciding to sign the Agreement. It is well-settled law, however, that

> a party who has the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the instrument based on [extra-contractual] representations that differ from the terms of the contract. Statements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.

(Citations and punctuation omitted.) Novare Group, Inc. v. Sarif, 290 Ga. 186, 188-189 (718 SE2d 304) (2011). See also Craft v. Drake, 244 Ga. 406, 408 (260 SE2d 475) (1979); Lewis, supra, 189 Ga. at 598.

The Court of Appeals held that the Reymonds' failure to read the Agreement was excused because the jury would have been authorized to find

that Legacy intentionally prevented the Reymonds from reading the Agreement based on evidence that they gave the Agreement to the Reymonds on the same day it was signed and told them that they had to sign the documents that day or another franchisee would be allowed to take their desired location. While these allegations would have authorized a jury to conclude that Legacy rushed the Reymonds by threatening the loss of their desired franchise location, they are legally insufficient to support a finding that the Reymonds *were prevented from reading the Agreement* through fraud or misleading artifice. See Budget Charge Accounts, Inc. v. Peters, 213 Ga. 17, 18 (96 SE2d 887) (1957) (mere allegation that defendant was in a hurry insufficient to excuse plaintiffs from reading documents); Citizens Bank, Vienna v. Bowen, 169 Ga. App. 896, 897 (315 SE2d 437) (1984) (evidence that defendants covered part of document and were in a hurry to have documents signed insufficient to establish that plaintiff was prevented by fraud from reading documents). Indeed, the complaint, the Reymonds' arguments, and the evidence at trial all demonstrate that the Reymonds were not prevented from reading the Agreement but that they blindly relied on Legacy's representations regarding expected income as a result of their own desire to quickly begin construction of their center at a particular location.

6

In addition, the record demonstrates that had they chosen to read the Agreement, the Reymonds would have been aware that they were signing an agreement expressly stating that Legacy had made no representations and they were not given or relying on any representations by Legacy regarding potential volume, profit, income, or success of the franchise[5] and that by signing the Agreement, they were acknowledging that neither Legacy nor any of its agents had made any representation as to: "(i) earnings capability of Legacy Academy Center; (ii) a specific level of potential sales, income, gross or net profit for the Franchisee; or (iii) a specific level of sales, income, gross or net profits of existing centers (whether franchised or company-owned) other than as specifically described in the Offering Circular."[6] Because the pre-contractual earnings claim upon which the Reymonds allege they relied expressly contradicts the disclaimer and acknowledgment provisions of the Agreement,

[5] The Agreement included a disclaimer clause providing that "Franchisor expressly disclaims the making of, and Franchisee and each Owner acknowledge that it has not received from Franchisor or any party on behalf of Franchisor, any representation, warranty or guarantee, express or implied, as to the potential volume, profit, income or success of the business licensed under this Agreement."

[6] It is undisputed that the offering circular made no representations regarding potential sales, income, gross or net profits for either existing or potential franchisees. In fact, it affirmatively states both that it contains no representations as to potential sales, income or profits and that franchisor was making no representations as to potential sales, income or profits.

their reliance on such representations was unreasonable as a matter of law.  See

Novare Group, supra, 290 Ga. at 188-189 ("[s]tatements that directly contradict

the terms of the agreement . . . simply cannot form the basis of a fraud claim for

the purpose of cancelling or rescinding a contract"); Craft, supra, 244 Ga. at 408

(pre-contractual statement that contradicted language of contract cannot be basis

for fraud absent evidence that plaintiff was prevented by fraud from reading the

contract); Ledford v. Smith, 274 Ga. App. 714, 726 (618 SE2d 627) (2005)

("Fraud cannot be the basis of an action if it appears that the party alleging the

fraud had equal and ample opportunity to prevent it and yet made it possible

through the failure to exercise due diligence. [Cits.]").  As stated in Lewis,

supra, 189 Ga. at 601:

> The law will not excuse [a plaintiff] for failing to read the instrument because of her confidence in the defendant, upon whom she had no legal right to rely, and who the allegations show employed no trick or artifice that caused her to fail to do her duty in reading before signing.  No one can truthfully claim to have been defrauded in a matter about which that one has full knowledge and opportunity to exercise his free choice. The law will protect the innocent against fraud . . . but it demands of every one that he make use of his own facilities to avoid being defrauded. No other rule could safely be adopted and enforced by the courts with reference to written instruments. It is essential to all business relationships that the validity and solemnity of written contracts, freely and voluntarily executed, be upheld.

See also <u>B.E. Robuck, Inc. v. Walker</u>, 212 Ga. 621 (2) (94 SE2d 696) (1956).

Absent any evidence of fraud that prevented the Reymonds from reading the Agreement, the evidence demanded a verdict in favor of Legacy on the rescission claim.

2. Having determined that the Reymonds were entitled to the remedy of rescission, the Court of Appeals held that the merger clause contained in the rescinded Agreement did not bar the remaining claims for fraud, negligent representation, and RICO violations. Our ruling in Division 1 now mandates a different result.

There is no dispute that the Reymonds executed the Agreement and our holding in Division 1 affirming its validity means that they are bound by its provisions, including a comprehensive merger clause which, using standard contract language, states that "this agreement constitutes the entire agreement of the parties with respect to the matters contained herein. This [a]greement terminates and supercedes any prior agreement between the parties concerning the same subject matter." Under Georgia law, as "a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual

9

representations." See First Data POS, Inc. v. Willis, 273 Ga. 792, 795 (546

SE2d 781) (2001). As we explained in First Data,

> [w]here a conflict exists between oral and written representations,
> it has long been the law in Georgia that if the parties have reduced
> their agreement to writing, all oral representations made antecedent
> to execution of the written contract are merged into and
> extinguished by the contract and are not binding upon the parties.

Id. at 794-795 (citations omitted). Thus, where a written contract contains a

comprehensive merger clause, "prior or contemporaneous representations that

contradict the written contract cannot be used to vary the terms of a valid written

agreement purporting to contain the entire agreement of the parties, nor would

the violation of any such alleged oral agreement amount to actionable fraud."

Id. at 795, quoting Campbell v. C&S Nat. Bank, 202 Ga. App. 639, 640 (415

SE2d 193) (1992). Compare Authentic Architectural Millworks, Inc. v. SCM

Group USA, Inc., 262 Ga. App. 826 (2) (a) (586 SE2d 726) (2003) (merger

clause does not bar fraud and negligent misrepresentation claims where alleged

misrepresentations are contained within contract) and Raysoni v. Payless Auto

Deals, LLC, 296 Ga. 156, 157-158 (766 SE2d 24) (2014) (partial merger clause

was not comprehensive and did not bar reliance on written representations

outside scope of merger clause). It follows that the Reymonds' fraud, negligent

misrepresentation, and violation of RICO claims which depended entirely on allegations of pre-contractual representations are precluded as a matter of law by the Agreement's merger clause.[7]

3. The Reymonds argue that even if Legacy was entitled to directed verdicts on their claims for fraud, negligent misrepresentation, and RICO, the jury's award of $750,000 in compensatory damages can be upheld as an award of damages on their OCGA § 51-1-6 claim.[8] We cannot agree. The verdict form submitted to the jury, which was reviewed and agreed to by the parties, asked the jury to determine, in pertinent part: (1) whether as to the Reymonds' claims against Legacy, it found in favor of the Reymonds or Legacy, and if in favor of the Reymonds, in what amount; (2) if it found in favor of the Reymonds and awarded damages and found Legacy liable under the RICO statute, whether

---

[7] Contrary to the Reymonds' argument, our holding in City Dodge, Inc. v. Gardner, 232 Ga. 766, 769-770 (208 SE2d 794) (1974), does not require a different result. We stated in City Dodge that where there is evidence from which a jury could find that a rescinded contract is void because of antecedent fraud, the contract's disclaimer clause would be ineffectual because "in legal contemplation, there is no contract between the parties." Id. at 770. In comparison, the terms of the contract in this case, including the merger and disclaimer clauses, are enforceable against the Reymonds because there was no evidence from which a jury could have determined that they were entitled to rescind the Agreement.

[8] Legacy did not seek review on certiorari of the Court of Appeals' holding as to the OCGA § 51-1-6 claim so we express no opinion on that issue.

11

the Reymonds were entitled to additional RICO damages; and (3) whether either party was to be awarded costs of litigation and if so, in what amount. The verdict thus clearly reflects the jury's finding that Legacy violated the RICO statute because it awarded the Reymonds $375,000 in additional RICO damages. The verdict provides no insight, however, into the jury's specific findings regarding the other claims presented for its determination. In fact, it is impossible to ascertain from the general verdict returned whether the jury based its award of damages solely on the RICO violation or on a combination of the RICO violation and one of the other asserted grounds, several of which we have determined should not have been submitted to the jury. See Division 1, supra. Accordingly, the jury's verdict must be reversed in its entirety and the case remanded for a new trial. See Ga. Power Co. v. Busbin, 242 Ga. 612, 616 (250 SE2d 442) (1978) (verdict cannot stand where appellate court cannot determine whether verdict was entered on a proper basis).

Judgment reversed in part and case remanded. Benham, Hunstein, Melton Nahmias and Blackwell, JJ., and Judge Ural Glanville concur. Hines, P. J., not participating.

Decided April 20, 2015.

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 775.

C. David Joyner; Gregory, Doyle, Calhoun & Rogers, Charles L. Bachman, Jr., for appellants.

Ichter Thomas, Cary Ichter, W. Daniel Davis, for appellees.

Greenberg Traurig, Ernest L. Greer, Michael J. King, amici curiae.