**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 19, 2022**

# In the Court of Appeals of Georgia

A21A0055. WEST et al. v. BOWSER et al.

BROWN, Judge.

In *West v. Bowser*, 360 Ga. App. 103 (860 SE2d 904) (2021), we reversed the trial court's order compelling arbitration in a wrongful death action filed by Jobe West, individually and as executor of the estate of Ronald West, and Kelly Blottenberger as the surviving children of Ronald (collectively "the plaintiffs") against Provident Group-Creekside Properties, LLC, d/b/a Provident Village at Creekside, Provident Resources Group, Inc., and Provident Resources Management, LLC (collectively "the Provident defendants"). Pertinently, we held in Division 1 (a) that the provisions of the Georgia Code pertaining to guardians of adult wards, see OCGA § 29-4-1 et seq. ("the Guardianship Code"), did not give Jobe, as Ronald's guardian, the authority to enter into a pre-dispute arbitration agreement ("the

Arbitration Agreement") on Ronald's behalf. Id. at 106-107 (1) (a). We based that holding on our precedent in *CL SNF, LLC v. Fountain*, 355 Ga. App. 176 (843 SE2d 605) (2020) ("*Fountain I*"). *West*, 360 Ga. App. at 106-107 (1) (a), (b).

Three months later, our Supreme Court reversed *Fountain I*, holding that the Guardianship Code grants a guardian authority to enter into a binding pre-dispute arbitration agreement where the exercise of such power is reasonably necessary to provide adequately for the ward's support, care, health, and welfare. *CL SNF, LLC v. Fountain*, 312 Ga. 416 (863 SE2d 116) (2021) ("*Fountain II*"). Thereafter, our Supreme Court granted certiorari in this case, vacated our decision, and remanded to this Court for reconsideration in light of *Fountain II*. *Provident Group-Creekside Properties v. West*, Case No. S21C1253 (Nov. 2, 2021). We now affirm.

1. In light of *Fountain II*, we vacate Division 1 of our earlier opinion. In its place, we hold that OCGA § 29-4-23 (a) (4) of the Guardianship Code gave Jobe the authority to enter into the Arbitration Agreement on Ronald's behalf. See *Fountain II*, 312 Ga. at 420-421.

2. In Division 2 of our opinion, we declined to address the plaintiffs' remaining arguments related to the enforceability of the Arbitration Agreement. *West*, 360 Ga. App. at 109 (2). Given our holding in Division 1, we now find it necessary to address

2

those arguments. The plaintiffs contend that the agreement is unsupported by consideration, that Jobe was fraudulently induced into signing the agreement, and that the agreement is void under Georgia law and as against public policy. We find these contentions unavailing.

Whether a valid and enforceable arbitration agreement exists is a question of law. *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). "On appeal from the grant or denial of a motion to compel arbitration, the standard of review is whether the trial court was correct as a matter of law. The construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." (Citations and punctuation omitted.) *Aaron v. United Health Svcs. of Ga.*, 349 Ga. App. 563, 563-564 (826 SE2d 442) (2019). "And the validity of an arbitration agreement is generally governed by state law principles of contract formation." (Citation and punctuation omitted.) *United Health Svcs. of Ga. v. Alexander*, 342 Ga. App. 1, 2 (2) (802 SE2d 314) (2017). See also *Lynn v. Lowndes County Health Svcs.*, 354 Ga. App. 242, 245 (2), n.3 (840 SE2d 623) (2020) ("This principle still applies in cases . . . where the arbitration agreement states that the agreement is to be governed by the Federal Arbitration Act."). "As the party seeking arbitration, [defendants] bear[ ] the burden of proving the existence of a valid and

3

enforceable agreement to arbitrate." (Citation and punctuation omitted.) *Triad Health Mgmt. of Ga., III v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009).

(a) The plaintiffs argue that the Arbitration Agreement is a separate and distinct contract from the Residential Agreement and thus requires separate and distinct consideration. The Provident defendants argue that the true consideration in the contract is the mutual promises to arbitrate any disputes. We agree with the Provident defendants.

Under Georgia law, mutual promises and obligations are sufficient consideration to support a contract. See *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404, 407 (1) (381 SE2d 605) (1989). See also *Rushing v. Gold Kist*, 256 Ga. App. 115, 119 (3) (567 SE2d 384) (2002). Here, the Arbitration Agreement demonstrated mutuality of obligation, as it required both parties to submit any and all disputes to binding arbitration. Accordingly, there was sufficient consideration to support the Arbitration Agreement. See *Attenborough v. Dillard's Dept. Store*, No. 1:06-CV-0291-TWT, 2006 WL 1663299, at *2 (II) (N.D. Ga. June 9, 2006) (holding that arbitration agreement was supported by consideration "as it required both the Plaintiff and the Defendant to submit all discrimination and retaliation disputes related to the Plaintiff's employment to 'final and binding arbitration'"). See also

*Caley v. Gulfstream Aerospace Corp.*, 428 F3d 1359, 1376 (II) (E) (3) (11th Cir. 2005).

(b) The plaintiffs next contend that Jobe was fraudulently induced to sign the Arbitration Agreement. We disagree.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Ekeledo v. Amporful*, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007).

> Having elected to seek rescission and pursue a claim for fraud, [the plaintiffs are] required to prove that [the Provident defendants] through misrepresentation, act, or artifice intentionally induced [Jobe] to sign the [Arbitration] Agreement and that [Jobe] justifiably relied on the misrepresentation, act, or artifice, being reasonably diligent in the use of the facilities at [his] command.

(Citation and punctuation omitted.) *Legacy Academy v. Mamilove*, 297 Ga. 15, 17 (1) (771 SE2d 868) (2015). In this vein, the plaintiffs contend that Jobe was fraudulently induced to sign the Arbitration Agreement because he was "made to believe by the representatives of Provident Village that he was required to sign all of the documents placed before him, which apparently included the Arbitration Agreement." However,

5

[o]ne cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud. One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract.

(Citation and punctuation omitted.) *Megel v. Donaldson*, 288 Ga. App. 510, 514 (2) (654 SE2d 656) (2007). Accord *Results Oriented v. Crawford*, 245 Ga. App. 432, 439 (1) (b) (538 SE2d 73) (2000). As the plaintiffs themselves point out, the Arbitration Agreement expressly provided, in bold, all-caps, that "**IF THIS AGREEMENT IS NOT SIGNED, THE RESIDENT WILL STILL BE ALLOWED TO RECEIVE SERVICES AT THE FACILITY**." (Emphasis in original.) The plaintiffs assert that Jobe was not given the opportunity to read the documents, but nothing in the record shows that Jobe was *prevented* from reading the Arbitration Agreement. See *Legacy Academy*, 297 Ga. at 18 (1) (allegations that defendants gave the franchise agreement to the plaintiffs on the same day it was signed and told them that they had to sign the documents that day or another franchisee would be allowed to take their desired

6

location were legally insufficient to support a finding that the plaintiffs were prevented from reading the agreement through fraud or misleading artifice). He simply chose not to do so before signing the agreement. Absent any evidence of fraud that prevented Jobe from reading the Arbitration Agreement, plaintiffs' claim that Jobe was fraudulently induced to sign by statements which contradict the express terms of the Arbitration Agreement fails. See id. (because the pre-contractual representations by the defendants upon which the plaintiffs allege they relied expressly contradict the agreement, their reliance on such representations was unreasonable as a matter of law).

(c) Plaintiffs assert that the Arbitration Agreement is void under Georgia law, specifically, the "Remedies for Residents of Personal Care Homes Act," OCGA § 31-8-130 et seq., and the "Bill of Rights for Residents of Long-Term Facilities," OCGA § 31-8-100 et seq. Pursuant to OCGA § 31-8-133, the plaintiffs point out, "[personal care home r]esidents' rights shall include all rights enumerated in the rules and regulations of the Department of Community Health, including, but not limited to, procedural protections relating to admission, transfer, or discharge of residents." Subsection (a) of OCGA § 31-8-136 further provides: "Any resident or the representative or legal surrogate of the resident, if any, may bring an action in a court

7

of competent jurisdiction to recover actual and punitive damages against a personal care home or its governing body, administrator, or employee for any violation of the rights of a resident granted under this article." See also OCGA § 31-8-136 (c) ("The right of a resident to bring an action pursuant to this Code section is in addition to any and all other rights, remedies, or causes of action the resident may have by statute or at common law."). The plaintiffs then point to Section 111-8-63-.16 of the Rules and Regulations of the Georgia Department of Community Health, which provides in relevant part that an "assisted living community must not use a written admission agreement or any other written agreement signed by the resident or the resident's legal representative which waives or attempts to waive any of the resident's rights these rules protect." Ga. Comp. R. & Regs., r. 111-8-63-.16 (1). Based on these provisions, the plaintiffs assert that the Arbitration Agreement takes away Jobe's right as a resident to bring an action in court and have a jury trial, in violation of the Remedies for Residents of Personal Care Homes Act and the Rules and Regulations of the Department of Community Health as well as the United States and Georgia Constitutions.

It is well established that "[p]arties to a binding arbitration agreement can waive constitutional rights, including the right to trial by jury to obtain a quick and

8

simple resolution of the dispute." *Wise v. Tidal Construction Co.*, 261 Ga. App. 670, 674 (2) (583 SE2d 466) (2003). See also *Greene v. Hundley*, 266 Ga. 592, 595 (2) (468 SE2d 350) (1996); *Burnham v. Cooney*, 265 Ga. App. 246, 247 (1) (593 SE2d 701) (2004). Moreover, the Arbitration Agreement provides that "the parties expressly stipulate that the Federal Arbitration Act, 9 U.S.C. §§ 1-16, shall exclusively govern the enforcement of this Agreement." See *Triad*, 298 Ga. App. at 206 ("[i]f the intent of the parties indicates that arbitration would be governed by the FAA, this Court will enforce the intentions of the parties") (citation and punctuation omitted). See also *Harrison v. Eberhardt*, 287 Ga. App. 561, 563 (2) (a) (651 SE2d 826) (2007). And, "the FAA preempts any state law that conflicts with its provisions or undermines the enforcement of private arbitration agreements." *Langfitt v. Jackson*, 284 Ga. App. 628, 634-635 (3) (644 SE2d 460) (2007). "The FAA simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. Thus, the FAA will pre[ ]empt state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Citation and punctuation omitted.) *BDO USA, LLP v. Coe*, 329 Ga. App. 79, 83 (1) (763 SE2d 742) (2014). To the extent that the Remedies for Residents of Personal Care Homes Act, the Bill of Rights for

9

Residents of Long-Term Facilities, or any corresponding regulations prohibit arbitration of the plaintiffs' claims, they are preempted by the FAA. See *Marmet Health Care Ctr. v. Brown*, 565 U. S. 530, 533 (I) (132 SCt 1201, 182 LE2d 42) (2012) (state's prohibition against pre-dispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes preempted by the FAA); *Weaver v. Doe*, 371 P3d 1170, 1174, 1177 (Okla. Civ. App. 2016) (provision of Oklahoma's Nursing Home Care Act providing that any waiver of the right to commence an action against the nursing home owner or licensee for any intentional or negligent act or omission shall be null and void and without legal effect preempted by the FAA); *Fosler v. Midwest Care Ctr. II*, 398 Ill. App. 3d 563, 565 (928 NE2d 1) (2009) (FAA preempts the provisions of Illinois's Nursing Home Care Act that purport to nullify a nursing home resident's waiver of the right to commence an action in court and to a jury trial).

(d) Finally, the plaintiffs contend that the Arbitration Agreement is unenforceable because it is void as against public policy. OCGA § 13-8-2 (a) provides: "[a] contract that is against the policy of the law cannot be enforced." The statute then lists several types of contracts that are void as against public policy, none

of which are relevant here,[1] but the list is expressly non-exhaustive. OCGA § 13-8-2 (a). Thus,

> [w]e are not restricted by this list in voiding contracts that are against public policy; however, the power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. The authority of the lawmaking power to interfere with the private right of contract has its limits, and the courts should be extremely cautious in exercising the power to supervise private contracts which the lawmaking power has not declared unlawful.

(Citation and punctuation omitted.) *Edwards v. Grapefields*, 267 Ga. App. 399, 403 (1) (599 SE2d 489) (2004). See also *Innovative Images v. Summerville*, 309 Ga. 675, 681 (3) (a) (848 SE2d 75) (2020) ("courts must exercise extreme caution in declaring a contract void as against public policy and may do so only where the case is free from doubt and an injury to the public clearly appears") (citation and punctuation

---

[1] These include contracts tending to corrupt legislation or the judiciary; contracts in general restraint of trade, as distinguished from contracts which restrict certain competitive activities (restrictive covenants); contracts to evade or oppose the revenue laws of another country; wagering contracts; and contracts of maintenance or champerty. OCGA § 13-8-2 (a) (1) - (5).

11

omitted). We conclude that the alleged violation of public policy in this case is not "free from doubt."

Contrary to the plaintiffs' assertions, "binding arbitration agreements generally are not in contravention of the public policy of this State." *Innovative Images*, 309 Ga. at 682 (3) (a). Indeed, "[b]y enacting the [Georgia Arbitration Code], the Georgia General Assembly has established a clear public policy in favor of arbitration." *Helms v. Franklin Builders*, 305 Ga. App. 863, 865 (700 SE2d 609) (2010). Nonetheless, the plaintiffs assert that there also is a strong public policy in this State for the protection of the elderly against abuse. See OCGA § 16-5-100 et seq. ("Protection of Elder Persons"); OCGA § 30-5-1 et seq. ("Disabled Adults and Elder Persons Protection Act"); OCGA § 30-8-80 et seq. ("Long-term Care Facility Resident Abuse Reporting Act"). Relying on *Lichon v. Morse*, 327 Mich. App. 375 (933 NW2d 506) (2019), in which the Michigan Court of Appeals found an employment contract's arbitration clause unenforceable in a case involving sexual assault in the workplace, id. at 394-395 (II), the plaintiffs urge us to adopt a similar stance with regard to the enforceability of an arbitration clause in the context of elder abuse in a licensed care facility. The plaintiffs' reliance on *Lichon* is misplaced for several reasons. First, the court in *Lichon* did not determine whether the arbitration agreement is contrary to

12

public policy. 327 Mich. App. at 390 (II), 397 (II) ("[T]his Court is asked to decide whether the sexual assault and battery of an employee at the hands of a superior is conduct related to employment. We conclude that it is not."). Indeed, some of the quotations employed by the plaintiffs in their brief are merely a recitation of the plaintiff's arguments in that case. Id. at 383 (I) (A). Additionally, the Supreme Court of Michigan vacated the Court of Appeals' decision in *Lichon*. *Lichon v. Morse*, 507 Mich. 424, 446 (IV) (968 NW2d 461) (2021). The plaintiffs have pointed to no Georgia cases finding any category of arbitration agreements void as against public policy. We decline to do so for the first time here.[2] Moreover, such a public policy would run afoul of the FAA. See *Brown*, 565 U. S. at 533 (I) (West Virginia's public policy prohibition against pre-dispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes preempted by the FAA). Accordingly, we now affirm the trial court's order compelling arbitration.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur*.

---

[2] In arguing that the Arbitration Agreement is void as against public policy, the plaintiffs assert, in passing, that the agreement is "unconscionable." However, the doctrines of unconscionable contracts and contracts that are void as against public policy are "somewhat distinct," and the analyses should not be conflated. *Innovative Images*, 309 Ga. at 680 (3), 684 (3) (b).

ON MOTION FOR RECONSIDERATION

The plaintiffs have filed a motion for reconsideration of Division 1, asserting that Jobe did not sign the Arbitration Agreement in his capacity as Ronald's guardian but rather as a family member. The plaintiffs point out that the signature page of the Arbitration Agreement provides signature lines for the "Signature or Mark of Resident," "Signature of Power of Attorney," "Signature of Health Care Agent/Surrogate," "Signature of Family Member," and "Signature of Facility Representative"; but Jobe West's name and signature appear only on the "Signature of Family Member" line. Citing *C. R. of Thomasville, LLC v. Hannaford*, 363 Ga. App. 581 (871 SE2d 679) (2022), and *Emory Healthcare v. van Engelen*, 362 Ga. App. 818 (870 SE2d 223) (2022), the plaintiffs argue that the capacity in which Jobe intended to sign the Arbitration Agreement is a factual question that should be resolved by the finder of fact, i.e., a jury. Both of these cases are distinguishable and do not mandate a different result.

In *van Engelen,* this Court upheld the trial court's determination that there was no valid and enforceable agreement requiring arbitration of claims brought by parents on behalf of their baby "because the clear and unambiguous terms on the face of each [of the two agreements signed by the pregnant mother] show that [the pregnant mother] signed the contracts in her personal capacity, not in a representative capacity

on behalf of her unborn baby." (Emphasis omitted.) 362 Ga. App. at 825. Here, Jobe was not a resident signing the agreement for his own admission as in *van Engelen*, and Ronald West was designated as the "Resident" on each page of the Arbitration Agreement. See *CL SNF, LLC v. Fountain*, 364 Ga. App. 371 (875 SE2d 370) (2022). Moreover, *van Engelen* did not involve a guardianship.

In *Hannaford*, the resident's husband, who held power of attorney ("POA"), executed on behalf of his wife a nursing facility admission agreement which included an arbitration clause. 363 Ga. App. at 581. The husband signed his own name in the agreement's spaces designated for both the "'Resident'" and the "'Resident's Representative.'" Id. The agreement form contained several options under both "'Legal Representative'" and "'Responsible Party,'" but the husband checked only "'Spouse'" under the heading "'Responsible Party'" and did not select any of the options under "'Legal Representative,'" including "'Agent under a . . . Power of Attorney.'" Id. at 581-582. We held "that the existence of a POA between spouses, standing alone, is insufficient to bind the principal under the facts of this case. Rather, there must be some evidence that the agent was intentionally or affirmatively exercising his authority under the POA for the principal to be bound." Id. at 586 (1).

The plaintiffs argue that our decision in *Hannaford* "requires a finding under the facts of the present action that the [Arbitration Agreement] at issue is unenforceable due to the lack of intent and a meeting of the minds to create a binding

agreement to arbitrate." But in this case, there was no applicable option for Jobe to decline to select. While the Arbitration Agreement provided signature lines for a "Power of Attorney" and "Health Care Agent/Surrogate," there was no specific signature line option provided for a guardian or conservator, a separate and distinct type of legal representative. Compare OCGA § 29-4-1 et seq. ("the Guardianship Code") with OCGA § 31-32-1 et seq ("the Georgia Advanced Directive for Health Care Act"). Cf. *Coleman v. United Health Svcs. of Ga.*, 344 Ga. App. 682, 683 (1) (a) (812 SE2d 24) (2018) (advanced directive for health care appointing brother-in-law as health care agent did not authorize brother-in-law to sign arbitration agreement on behalf of nursing care facility resident because the decision to execute the arbitration agreement could not be viewed as a health care decision).

Instead, the facts of this case are more akin to *Triad*, supra. There the resident's son signed a nursing home facility admission contract containing an arbitration clause. 298 Ga. App. at 204. The father's name was specified in the contract as "'Patient/Resident'" and the son signed the contract as the "'Fiduciary Party.'" Id. Below the signature of the fiduciary, the agreement provided: "'Fiduciary Party executes this Contract in the capacit(y)(ies) checked below and shall provide evidence of Fiduciary Party's capacit(y)(ies) at the time of signing of this Contract.'" Id. at 207 (2). Below this were 11 boxes corresponding to various capacities in which the fiduciary might be representing the patient, such as guardian, attorney-in-fact, and

trustee, among others. Id. The agreement also provided that "'Fiduciary Party shall act on behalf of Patient/Resident for all purposes permitted under applicable law.'" Id. The only box checked under the son-in-law's signature was "'immediate family member[.]'" Id. We recognized that while

> such relationship is not in itself sufficient to establish that [the son] was his father's agent . . . [t]he undisputed evidence shows that in effect at the time of [the son's] execution of the Admission Contract was a general power of attorney, executed by [the father]. . . . Thus [the son] was an immediate family member who was also [the father's] expressly appointed agent. Under the circumstances of the transaction, which involved [the father's] admission into a treatment facility while incapacitated, [the son's] execution of the Admission Contract on behalf of his father was "necessary, requisite or proper," within the scope of the agency contemplated by the power of attorney, and [the father] was bound thereby.

Id. at 207-208 (2).

Similarly, here, Ronald West was specified in the Arbitration Agreement as the "Resident," and Jobe signed in a representative capacity but only signed his name as "Family Member." However, the undisputed evidence shows that at the time Jobe signed the Arbitration Agreement, he had been appointed guardian and conservator for his father, who was deemed incapacitated.[1] In addition, Clause 1 of the Arbitration

---

[1] As stated in our prior opinion, "Letters of Guardianship and Conservatorship of Adult Ward were issued by the Probate Court of Carroll County in June 2017." *West*, 360 Ga. App. at 103. The Letters of Guardianship of Adult Ward state that

Agreement, titled "Those Signing this Contract," provides: "A person signing who routinely makes decisions for the Resident, if not the Power of Attorney or Guardian/Conservator, will be considered a Legal Representative." We find no merit in the plaintiffs' contention that Jobe did not sign the Arbitration Agreement in his capacity as Ronald's guardian such that Ronald was not bound by the terms of the Agreement.

---

Ronald West "was found by this [c]ourt to be in need of a guardian[.]" As provided in OCGA § 29-4-1 (a), "[t]he court may appoint a guardian for an adult only if the court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning his or her health or safety." The record also shows that Ronald had been diagnosed with Alzheimer's disease and "suffered from significant memory impairment."