**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 1, 2024**

# In the Court of Appeals of Georgia

A23A1551. JIMENEZ v. HOUSEBOATS ON LANIER, INC. et al.

FULLER, Senior Judge.

Plaintiff Rachel Jimenez purchased a houseboat from Bradley Bartlett, who had listed the boat with a brokerage firm, Houseboats on Lanier, Inc. ("HOL"). After the boat began to leak and required significant repairs, Jimenez sued HOL; Victoria Edwards, as HOL's agent and individually; and Tim McNeil, as HOL's agent and individually (collectively, "the appellees"), for damages.[1] The appellees moved for summary judgment, arguing that they were not parties to the contract and that Jimenez's claims were precluded by the contract's merger and "as-is" clauses. The

---

[1] Jimenez also sued Bartlett and the marine surveyor who inspected the houseboat, but the claims against those parties are not at issue in this appeal.

trial court granted summary judgment to the appellees, and Jimenez appeals. For reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from an order either granting or denying summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Ledford v. Smith*, 274 Ga. App. 714, 715 (618 SE2d 627) (2005) (citations and punctuation omitted).

So viewed, the evidence shows that Jimenez – a first-time boat buyer – inquired about an online advertisement for a pre-owned houseboat. The boat was owned by Bradley Bartlett, but the advertisement was placed by HOL: a houseboat brokerage business with whom Bartlett had contracted to list the houseboat for sale in exchange for a sales commission. Tim McNeil and Victoria Edwards were officers and owners of HOL.

Jimenez did two walkthroughs of the boat and noticed that the aluminum wall panels had been removed from the master bedroom, revealing "rotted joists and the rotted ceiling." According to Jimenez, she asked Edwards about the wall, and

Edwards responded, "[Y]es, the owners will fix that." Edwards also told Jimenez that she would not need to replace the whole roof because four of five soft spots on the roof had been repaired, and that the remaining spot would not cost much to fix.

Edwards arranged for a sea trial and marine survey of the boat. The sea trial revealed that the motors were running warm, but McNeil told Jimenez that the issue was caused by the impellers and could be fixed for about $150. The survey indicated 19 concerns, which were summarized in an enumerated list, separate from the full survey. The list included notations such as that a corner of the roof was under repair, and that either the toilet or bathroom sink was leaking into the lower hull. Jimenez did not read the full survey, but went over the list of concerns "line-by-line" with Edwards, who told her that there was nothing on the list that would take a lot of money to fix. When Jimenez followed up about the rotted joists she had noticed on the walkthrough, Edwards assured her that "Bartlett had it fixed."

Jimenez bought the boat and soon discovered that the "master bedroom closet was rotted all the way through to the aluminum," and "everywhere [she] looked, there was actually mold." Water began to leak down the sides of the boat into the hulls, and at some point, the motors stopped working properly. After finding rotted

3

wood, mold, and electrical issues throughout the boat, Jimenez spent thousands of dollars on repairs, including a new roof and new outside walls. Despite Jimenez's attempts to remediate the damage, two contractors advised her that the mold infestation made the boat unsafe for habitation.

In February 2021, Jimenez sent a certified letter to HOL and Bartlett in which she "reject[ed] and revoke[d] acceptance" of the boat," "rescind[ed] the [a]greement," offered "to restore, and hereby unconditionally tender[ ]" the boat back in return for the purchase price and cost of repairs, and provided an address from which the boat was "available to be towed[.]" HOL and Bartlett apparently refused Jimenez's demands.

In March 2021, Jimenez sued HOL, McNeil and Edwards (individually), Bartlett, and the houseboat surveyor, raising claims of revocation and rescission of the contract; negligent misrepresentation; negligence; fraud; piercing the corporate veil; and violation of the Georgia Fair Business Practices Act (OCGA § 10-1-391 et seq.) ("FBPA").[2] Jimenez attached the purchase agreement to her complaint. Pertinently,

---

[2] Jimenez also asserted claims for breach of contract, breach of the duty of good faith and fair dealing, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranties, and violation of the Magnuson-Moss Warranty Act, but on appeal, she does not contest the trial

the terms and conditions of the agreement stated that the sale was "Contingent Upon: Marine Survey & Sea Trial Being To Buyer's Satisfaction" and that the "Boat [was] To Be Sold 'As Seen[.]'" The terms and conditions also provided that the buyer "certifie[d] that he/she has read the Terms and Conditions on the back of [the] document and agree[d] that [those terms were] incorporated as part of the" purchase agreement. Those additional terms and conditions contained the following clauses:

> 9. *Warranties.* Except to the extent required by state law, seller expressly disclaims all warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose. All warranties covering the equipment referred to on page 1 of this Agreement, if any, are made by the manufacture[r]. A copy of any applicable manufacturer's warranty shall be delivered by Seller to Buyer.

> 10. Buyer states that he/she has inspected and examined the equipment which is subject the Agreement and determined that the equipment is of satisfactory quality and is suitable for the purpose which it is purchased.

> [. . .]

> 12. Brokered or used boats are sold strictly on an "as is" basis. If this transaction involves a used boat, Buyer states that he/she has inspected

---

court's grant of summary judgment to the appellees on these claims.

and examined the boat as well as its equipment and accessories and found them in satisfactory condition or good working order.

At the bottom of the "Additional Terms and Conditions," in bold print and all caps, the purchase agreement included the following merger clause:

> **THIS DOCUMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN ITS PARTIES. NO OTHER REPRESENTATIVE, INDUCEMENTS OR PROMISES (WRITTEN OR VERBAL) HAVE BEEN MADE WHICH ARE NOT SET FORTH IN THIS AGREEMENT.**

At the same time Jimenez signed the purchase agreement, she also signed a disclaimer which stated:

> You are purchasing a pre-owned boat directly from the boat's owner. [HOL] is acting only as a consultant in this transaction. You are entitled to a marine survey. All buyers are encouraged to have a marine survey.
>
> The owner or anyone involved does not provide any warranties or guarantees on this boat.
>
> The [b]uyer and the seller may agree upon a list of repairs to be completed on the pre-owned boat. Other than agreed upon items, the boat is sold in "As Is" condition. The agreed upon items and their repair

is between the buyer and seller. [HOL] acts only to facilitate this transaction.

In January 2022 – while the lawsuit was ongoing – Jimenez listed the boat for sale online and sold it that same day for $45,000. The appellees subsequently moved for summary judgment, arguing in part that they were not a party to the purchase agreement; that Jimenez had affirmed the purchase agreement; and that the merger clause and disclaimer prevented Jimenez from reasonably relying on any representations that were not included in the written contract. The trial court granted summary judgment against Jimenez, and Jimenez now appeals.

1. Jimenez contends that the trial court erred by granting summary judgment on her revocation and rescission claim. In this regard, she argues that the court improperly determined that she was not in privity of contract with the appellees, and that her sale of the boat constituted an intent to affirm the purchase. Pretermitting whether the trial court's reasoning was correct, we affirm the grant of summary judgment based on the right for any reason doctrine because Jimenez could not have justifiably relied on HOL's oral representations. See *Cook Pecan Co. v. McDaniel*, 337 Ga. App. 186, 192 (3) (b) (786 SE2d 852) (2016) ("We may affirm the trial court's

grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below.").

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011). Here, Jimenez alleged in her complaint that she was entitled to revoke acceptance of the houseboat and rescind the contract because HOL "defrauded" her through its "willful, wanton, intentional misstatement[s] and omissions of material facts, and unfair and deceptive business practices." By seeking rescission and pursuing a claim in tort for fraud, Jimenez was required to prove that

> [HOL] through misrepresentation, act, or artifice intentionally induced [her] to sign the Agreement and that [she] justifiably relied on the misrepresentation, act, or artifice, being reasonably diligent in the use of the facilities at [her] command.

*Legacy Academy v. Mamilove, LLC*, 297 Ga. 15, 17 (1) (771 SE2d 868) (2015) (citation and punctuation omitted).

Whether it was reasonable for one to rely upon a certain misrepresentation is generally a question for a jury, although in some cases, the answer may appear so clearly that the question can be decided by a court as a matter of law. For instance, when one has entered a contract with a binding and comprehensive merger clause, any reliance upon precontractual representations is, generally speaking, unreasonable as a matter of law.

*Villalobos v. Atlanta Motorsports Sales, LLC*, 355 Ga. App. 339, 342 (1) (844 SE2d 212) (2020) (citation and punctuation omitted). Indeed,

> "[s]tatements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.

*Legacy Academy*, 297 Ga. at 17 (1) (citation and punctuation omitted). This is because a merger clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. Thus, if the contract contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract." *Overlook Gardens*

*Properties, LLC v. Orix, USA, LP*, 366 Ga. App. 820, 827 (1) (a) (ii) (884 SE2d 433) (2023) (citation and punctuation omitted).

Here, Jimenez argued below that HOL made numerous misrepresentations of fact about the condition and repair status of the boat. However, the purchase agreement specifically stated that the document contained the "entire agreement between its parties," that no verbal or written representations were made that were not set forth in the agreement, and that Jimenez had inspected and examined the boat and found it in "satisfactory condition or good working order." Likewise, the disclaimer expressly stated that neither "[t]he owner *[n]or anyone involved*" – i.e., the appellees – "provid[ed] any warranties or guarantees on [the] boat." (Emphasis supplied.) Moreover, the purchase agreement and disclaimer unequivocally stated that Jimenez was purchasing the houseboat "as seen" or "as is," and disavowed all warranties, verbal or written. Further, although the disclaimer provided that the "as is" clause could be overridden if the buyer and seller "agree[d] upon a list of repairs to be completed," the disclaimer further specified that any "agreed upon items and their repair is between the buyer and seller," not between the buyer and HOL, which was distinguished in the disclaimer as a "consultant" or "facilitat[or]." These clauses

directly contradicted the appellees' representations concerning the boat's condition, and thus, foreclose justifiable reliance on any representations other than those contained in the contract as a matter of law. See *Villalobo*s, 355 Ga. App. at 346 (1) (buyer of used truck could not justifiably rely on oral representations that truck was "in good condition" and had "no problems" in light of comprehensive merger and disclaimer clauses); *Novare Group*, 290 Ga. at 190 (3) (buyers could not justifiably rely on seller's promise of "spectacular city views" where the contract's merger clause precluded reliance on oral representations); *Legacy Academy*, 297 Ga. at 18-19 (1)-(2) (plaintiff could not justifiably rely on defendant's representations regarding the historical earnings of the franchise where the contract included a disclaimer that the seller did not make any representations about the earnings capability of the franchise); *Yee v. Barnwell*, 193 Ga. App. 820, 822 (1) (389 SE2d 392) (1989) (explaining that a principal's agents are included within the protection of a merger clause); see also *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855, 856-857 (2) (294 SE2d 533) (1982) ("The term 'sold as is' means sold in its present condition without any warranty as to soundness of condition or suitability for the purpose intended, and a fraud action cannot rest on a contradictory oral representation.").

2. In two related enumerations of error, Jimenez argues that the trial court erred by granting summary judgment on her tort claims for negligent misrepresentation, negligence (predicated on a violation of the FBPA),[3] fraud, and violation of the FBPA. Specifically, she points to McNeil's statement that the engine was running warm because of the impellers and could be fixed for $150, and Edwards' statements that: only one spot on the roof needed repair; Barrett repaired all of the rot in the walls; and nothing on the surveyor's list would take a lot of money to fix. Again, we discern no error. "Justifiable reliance is an essential element of [Jimenez's] fraud, negligent misrepresentation, and FBPA claims." *Novare Group*, 290 Ga. 186, 190 (3) (718 SE2d 304) (2011). For the same reasons discussed in Division 1, Jimenez's reliance on such representations was unreasonable as a matter of law in light of the contract's merger and "as-is" clauses, and summary judgment was proper. See *Villalobos*, 355 Ga. App. at 346 (1); *Novare Group*, 290 Ga. at 190 (3); *Legacy Academy*, 297 Ga. at 18-19 (1)-(2).

3. Finally, Jimenez contends that the trial court erred in finding no evidence that would justify piercing the corporate veil. Having lost her underlying tort claims,

---

[3] In her brief, Jimenez does not appear to challenge the trial court's ruling on her common law negligence claim. Accordingly, we affirm the trial court's grant of summary judgment in this regard.

Jimenez cannot demonstrate a basis for piercing the corporate veil, and this enumeration of error is moot. See *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190, 210 (6) (833 SE2d 317) (2019) (explaining that veil piercing is generally a means of holding an individual stockholder liable for debts incurred by the corporation); see also *Peacock v. Thomas*, 516 U. S. 349, 354 (II) (116 SCt 862, 133 LE2d 817) (1996) ("Piercing the corporate veil is not itself an independent . . . cause of action, but rather is a means of imposing liability on an underlying cause of action.") (citation and punctuation omitted).

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*